653 P.2d 362

Darlene **FRAZIER**, personal representative of Fred M. Frazier; Arcane Corporation, an Arizona corporation, Plaintiffs-Appellees, Cross-Appellants,

v.

**SOUTHWEST SAVINGS AND LOAN ASSOCIATION**, an Arizona corporation; Ernest Kenny and Mary Kenny, his wife, Defendants-Appellants, Cross-Appellees.

**SOUTHWEST SAVINGS AND LOAN ASSOCIATION**, an Arizona corporation, Defendants-Appellants, Cross-Appellees,

v.

**ARCANE CORPORATION**, an Arizona corporation; Darlene Frazier, as personal representative of Fred M. Frazier, Darlene Frazier and Robert Naimy, Defendants-Counter Claimants, Appellees.

No. 1 CA–CIV 5151.

Court of Appeals of Arizona, Division 1, Department A.

Aug. 10, 1982.

Rehearing Denied Sept. 21, 1982.

Review Denied Oct. 13, 1982.

*Store, supra.*

Lewis & Roca by Jeremy E. Butler, Paul G. Ulrich, Phoenix, for plaintiffs-appellees, cross-appellants.

Cahill, Hanson, Phillips & Mahowald by Gregory E. Hinkel, and Kunz & Waugh, Ltd. by Donald R. Kunz, Phoenix, for defendants-appellants, and cross-appellees.

## OPINION

OGG, Presiding Judge.

This is an appeal by appellants/defendants Ernest and Mary Kenny and South-

west Savings and Loan Association (Southwest) from a judgment entered on a jury verdict in favor of plaintiff/appellee Fred M. Frazier (Frazier). The action involves allegations of misrepresentation and nondisclosure in connection with the sale of land.

■ We begin with the well-established principle that on appeal from a judgment entered on a jury verdict, this court must view the evidence in a light most favorable to the prevailing party and must give that party all the reasonable inferences arising from that favorable view of the evidence. *McFarlin v. Hall,* 127 Ariz. 220, 619 P.2d 729 (1980); *Harvey v. Kellin,* 115 Ariz. 496, 566 P.2d 297 (1977).

On September 17, 1973, Southwest made an acquisition and development loan to Ricco Construction, Inc., in the amount of $451,875. This loan was secured by 68 lots in Ricco Villas I, a subdivision located in Scottsdale, Arizona. Thereafter, Ricco Construction commenced improvements on the lots so that they could be sold to the public.

Ricco Construction soon became interested in selling all of Ricco Villas I. Frazier became aware of this and expressed an interest in trading some unmounted gems he owned for the equity which Ricco Construction had in the subdivision.

A meeting was arranged in January, 1974, at Frazier's office in Twin Falls, Idaho. Present at this meeting from Arizona were Joe Ricard, Paul Pace, Tom Eccles and Ernest Kenny. Ricard was acting in his capacity as president of Ricco Construction, the owner of Ricco Villas I. Pace was vice-president of Ed Post Realty, which had the real estate listing on Ricco Villas I. Pace was also a principal in some other property which he presented to Frazier. Eccles, a senior escrow officer of Minnesota Title Company, was prepared to handle any escrow which might be opened if an agreement was reached.

Kenny was present as vice-president of Southwest. He had been involved in the loan to Ricard for the acquisition and development of Ricco Villas I. He was considered an expert on subdivision lending.

Any sale of Ricco Villas I had to be approved by Southwest. Kenny's purpose was to meet with Frazier and obtain the information necessary to qualify Frazier to take over the loan on Ricco Villas I and to handle any documentation which Southwest would require if the transaction was consummated.

Only preliminary presentations were made by the parties at this meeting, and no agreements were reached at that time. Frazier testified that at some time during the meeting, Ricard and Pace made representations that Ricco Villas I was "ready to go", meaning that the lots were ready to be sold to the public. It is undisputed that Kenny did not affirmatively represent that the subdivision was "ready to go".

Frazier subsequently came to Arizona on three separate occasions to view the property before an agreement was reached. On one occasion, Frazier testified that he went to Kenny's office at Southwest and met with Kenny and another Southwest employee. He was told that the loan committee had agreed to financing. Frazier emphasized that he wanted something that was ready to sell and that he didn't want to have to put any extra money in the project. Frazier testified that he was assured that lot sales would progress so that he would not have to come up with any money to make interest payments. Southwest had appraised the property at $1,020,000. It was required to have an appraisal as by law it was permitted to loan only 75% of the appraised value.

Art Fortune of Ed Post Realty testified that he heard Frazier specifically ask Ricard before closing whether the subdivision had city and state approval. Ricard assured him that it did.

These representations were false. The public report required by the Arizona Real Estate Department before lots might be sold to the public had never been filed. Furthermore, substantial work on Hayden Road bordering the subdivision was required before all building permits could be issued. The cost of this work was estimated at $70,000. No one told Frazier of either of these requirements.

On March 20, 1974, Frazier, as president of Arcane Corporation, entered into a purchase contract for the purchase of Ricco Villas I. The transaction closed on May 31, 1974.

Following the closing, Ed Post Realty attempted to make sales of the subdivision lots. No lots were sold, however, during the twenty months after closing. Frazier was required to make the first interest payment of $33,000 six months after closing. Frazier was unable to make the second interest payment six months later.

Discussions commenced between Frazier and Southwest regarding a deed in lieu of foreclosure. At the time of these negotiations, Southwest had reappraised the property downward to $832,000. Frazier relinquished the property to Southwest by deed in lieu of foreclosure and he gave Southwest a promissory note for $37,000, an amount which he was told would get Southwest "out whole, with all their charges, interest, and everything, and the improvements on Hayden Road."

Southwest later brought an action on the promissory note and was granted summary judgment. Frazier counterclaimed for unjust enrichment. Frazier subsequently brought an action for fraud and negligent misrepresentation. The claim for unjust enrichment was consolidated for trial with the fraud and negligent misrepresentation claims. After Frazier had presented his case, Southwest argued that there was no evidence from which the jury could find that Southwest had knowledge that the subdivision was not "ready to go". Accordingly, Southwest made a motion for directed verdict on the fraud and negligent misrepresentation claim based on, among other grounds, the argument that Southwest had no duty to speak to disclose to Frazier that the subdivision was not "ready to go". The trial court denied this motion. The jury found for Frazier on the fraud and negligent misrepresentation claims and awarded damages of $264,000. The jury also found for Frazier on the unjust enrichment claim but awarded zero damages. The trial court denied Southwest's motion for judgment notwithstanding the verdict.

Southwest has brought this appeal raising nine issues for review. Because one issue is dispositive of this appeal, we find that it is not necessary to address the other issues.

The dispositive issue is whether Southwest breached a duty it owed to Frazier. Frazier contends that Southwest breached a duty it owed to him in two respects. First, he argues that Southwest made affirmative misrepresentations to him. Second, he argues that Southwest heard the misrepresentations made by others that the property was "ready to go" and either deliberately concealed them or was negligent in failing to inform him that the representations were false.

Frazier contends that Kenny and Southwest made affirmative misrepresentations in appraising the property at a value of $1,020,000 and in representing to Frazier that lot sales would be so good that Frazier would not have to come up with any other money to meet his mortgage obligations.

■■ Mere representations as to value are generally considered expressions of opinion and will not support a claim for fraud. *Page Investment Company v. Staley,* 105 Ariz. 562, 468 P.2d 589 (1970); *Reese v. Cradit,* 12 Ariz.App. 233, 469 P.2d 467 (1970). *See also Fifty Associates v. Prudential Insurance Company of America,* 450 F.2d 1007 (9th Cir.1971) (the question of land value is generally a matter of opinion only). Furthermore, to constitute actionable fraud, a representation must relate to a past or existing fact, and cannot be based on unfulfilled promises or statements as to future events unless such were made with the present intention not to perform. *Staheli v. Kauffman,* 122 Ariz. 380, 595 P.2d 172 (1979); *Ahmed v. Collins,* 23 Ariz.App. 54, 530 P.2d 900 (1975).

■ The alleged misrepresentation concerning the appraisal is a mere representation as to value, and the alleged misrepresentation concerning the sales of the lots is a statement as to future events. Accordingly, in the absence of other alleged mis-

representations, Frazier's action for fraud cannot be based on affirmative misrepresentations. Frazier has alleged no other affirmative misrepresentations by Southwest.

The remaining issue is whether Southwest had a duty to speak to disclose to Frazier that the subdivision was not "ready to go". Frazier argues that Southwest either knew that the subdivision was not "ready to go" and concealed that fact or that Southwest had that information available to it and was negligent in failing to inform him that the representations were false.

Southwest contends that it had no duty to speak as a matter of law. Southwest argues that its only role in the transaction was as a lender and not as owner of any property; that its only purpose in going to Idaho in January, 1974 was to determine whether Frazier would qualify for financing; that there is no evidence that it had any knowledge of the requirement by the City of Scottsdale for the Hayden Road improvements; and that there is no evidence that it knew that the public report had not been filed.

Frazier argues that even if Southwest did not know that the representations were false, they should have known in the exercise of reasonable care that the representations were false. In support of his claim alleging negligent misrepresentation by Southwest in failing to correct representations which it should have known, in the exercise of reasonable care, were false, Frazier cites Restatement (Second) of Torts § 552 (1977), which reads in pertinent part:

§ 552. Information Negligently Supplied for the Guidance of others

(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

\*     \*     \*     \*     \*     \*

Arizona recognizes a cause of action for negligent misrepresentation. *See Van Buren v. Pima Community College District Board,* 113 Ariz. 85, 546 P.2d 821 (1976); *Arizona Title Insurance and Trust Company v. O'Malley Lumber Company,* 14 Ariz.App. 486, 484 P.2d 639 (1971). It is clear, however, that one is liable under § 552 if he "supplies false information". Southwest has made no affirmative misrepresentations.

We find that the reasoning of this court in *Arizona Title Insurance and Trust Company v. O'Malley Lumber Company, supra,* is instructive on this issue. In that case, the defendant Arizona Title told several contractors in response to their inquiries that money would be available to pay them for their labor and materials. When the contractors found that insufficient funds were available, they brought their claim against Arizona Title for negligent misrepresentation. In holding that Arizona Title would be liable for its negligent misrepresentations, we observed:

In the matter at bar, it is the law of the case that Arizona Title owed no contractual or trust duty to the contractors, and we are in agreement with Arizona Title to the extent of stating that *apart from any representations made by Arizona Title to the contractors concerning the availability of funds,* it did not owe the contractors the duty of making any calculations to ascertain whether sufficient funds would or would not be available to pay the contractors for their work. In other words, Arizona Title had no duty to speak or respond to the contractors' inquiries at all. But if it chose to speak, we think that under all of the circumstances its business relationship with the contractors carried with it a duty to exercise reasonable care in making representations about presently ascertainable facts.

*Id.,* 14 Ariz.App. at 492, 484 P.2d at 645 (emphasis by the court).

■ Similarly, in the present case, there was no fiduciary relationship between Frazier and Southwest. The facts of the present case are distinguishable from *Arizona Title* in that Southwest did not supply false information to Frazier. Southwest chose not to speak. It did not make any representations on the subject of whether the subdivision was "ready to go". Accordingly, absent any affirmative misrepresentations by Southwest, we find that an action for negligent misrepresentation will not lie and that Southwest owed no duty of due care to ascertain whether the subdivision was "ready to go".

Frazier also alleges concealment and nondisclosure on the part of Southwest. These theories are discussed in Restatement (Second) of Torts §§ 550 and 551 (1977) as follows:

§ 550. Liability for Fraudulent Concealment

One party to a transaction who by concealment or other action intentionally prevents the other from acquiring material information is subject to the same liability to the other, for pecuniary loss as though he had stated the nonexistence of the matter that the other was thus prevented from discovering.

\* \* \* \* \* \*

§ 551. Liability for Nondisclosure

(1) One who fails to disclose to another a fact that he knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to the same liability to the other as though he had represented the nonexistence of the matter that he has failed to disclose, if, but only if, he is under a duty to the other to exercise reasonable care to disclose the matter in question.

(2) One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated,

(a) matters known to him that the other is entitled to know because of a fiduciary or other similar relation of trust and confidence between them; and

(b) matters known to him that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading; and

(c) subsequently acquired information that he knows will make untrue or misleading a previous representation that when made was true or believed to be so; and

(d) the falsity of a representation not made with the expectation that it would be acted upon, if he subsequently learns that the other is about to act in reliance upon it in a transaction with him; and

(e) facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts.

■ It is clear that liability for concealment by Southwest under § 550 would require knowledge that the subdivision was not "ready to go" and action by which Southwest intentionally prevented Frazier from finding out that the subdivision was not "ready to go". *See* § 550, Comments a and b. The record contains no evidence from which the jury could have found active concealment by Southwest.

■ Liability under § 551 for nondisclosure seems to be the theory under which Frazier wishes to impose a duty to speak on Southwest. Subsection 2(e) of § 551 is the only section which is pertinent to the facts of this case. A duty to speak under this subsection will be imposed on a party[1] to a business transaction "if he knows that the other is about to enter into it under a

---

1. For this discussion, we assume, without deciding, that Southwest is a "party to a transaction" within the meaning of § 550 and 551. This may be questionable in light of the role of

Southwest as lender in the transaction whose only interest appears to have been to qualify Frazier to take over the loan upon completion of the sale.

mistake as to [facts basic to the transaction], and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts". If a party has such knowledge, then a duty will be imposed to exercise reasonable care to disclose such facts to the other party.

Frazier has failed to cite any portion of the record which would indicate that Southwest had knowledge of the Hayden Road requirement or the failure to file a public report. Viewing the evidence in a light most favorable to Frazier, we cannot find any testimony from which the jury could have found that Southwest knew of the falsity of the "ready to go" statement.

Daniel C. Raby was the City Engineer for the City of Scottsdale who had responsibility for determining whether the Ricco Villas I subdivision met city requirements. He testified that he usually works with the developer's consulting engineer, who in turn is the liaison with the financial institution. He further testified that he does not recall ever notifying Southwest of the Hayden Road requirement. James W. Craft testified that he was a consulting engineer employed by Ricco Construction in connection with Ricco Villas I. He was involved in discussions with Raby and the City concerning Hayden Road. He testified that he did not have any contact with any representative of Southwest at the subdivision site. There is no testimony from Craft indicating that he informed Southwest of the Hayden Road requirement. Art Fortune, an employee of Ed Post Realty at the time of the transaction, testified that he did not find out about the lack of a public report until after the closing of the transaction, when the Real Estate Commission notified Ed Post Realty of the lack of the public report. He further testified that, to his knowledge, Southwest did not know prior to closing that the public report had not been filed. We note that Ricard and Pace, the persons who allegedly made the misrepresentations, did not testify at trial.

The facts of *National Housing Industries, Inc. v. E.L. Jones Development Co.,* 118 Ariz. 374, 576 P.2d 1374 (App.1978), give us some guidance in this area. In that case, National Housing Industries (NHI) sought recovery against the defendant engineering consultant, on the ground that the defendant's employer, a subdivision owner, allegedly misrepresented the condition of the property as "ready to go" prior to the sale of the subdivision to NHI. This court, assuming that if the defendant knew of the misrepresentation it would have been under a duty to disclose its falsity, held that the defendant had no duty to speak to correct the alleged misrepresentations because there was no evidence that the defendant knew of the representations made by the subdivision owner as to the readiness of the subdivision for development.

While there is evidence in the present case of Southwest's knowledge that the "ready to go" statements were made, there is no evidence that Southwest knew that these representations were false.

The relationship between the court and the jury in determining whether a duty to speak exists has been stated as follows:

> Whether there is a duty to the other to disclose the fact in question is always a matter for the determination of the court. If there are disputed facts bearing upon the existence of the duty, as for example the defendant's knowledge of the fact, the other's ignorance of it or his opportunity to ascertain it, the customs of the particular trade, or the defendant's knowledge that the plaintiff reasonably expects him to make the disclosure, they are to be determined by the jury under appropriate instructions as to the existence of the duty.

Restatement (Second) of Torts § 551, Comment m (1977).

■ We find that, viewing the evidence in a light most favorable to Frazier, there is no evidence in the record from which the jury could find that Southwest had knowledge that the subdivision was not "ready to go". Accordingly, as a matter of law, Southwest had no duty to speak to inform

Frazier of this fact. We hold that the trial court erred in not entering a directed verdict for Southwest.

Judgment reversed with directions to enter judgment in favor of Southwest.

CORCORAN and FROEB, JJ., concur.