Douglas B. RICHEY and Loretta M. Richey, husband and wife, Appellants (Defendants),

v.

Scott Robert PATRICK and Deborah Ann Patrick, husband and wife, Appellees (Plaintiffs).

No. 94–50.

Supreme Court of Wyoming.

Oct. 18, 1995.

Rehearing Denied Nov. 7, 1995.

Sky D. Phifer of Phifer Law Office, Lander, for Appellants.

John T. Pappas of Western Law Associates, Lander, for Appellees.

Before GOLDEN, C.J., and THOMAS, MACY, TAYLOR and LEHMAN, JJ.

LEHMAN, Justice.

This case concerns the effect of a nondisclosure of sediment in a well system by the seller of realty under an "as is" contract. The district court concluded that the sellers' failure to disclose was negligent and amounted to a misrepresentation.

We reverse.

The sellers raise eight issues:

1. Did the Trial Court err in finding the contract void ab initio?

2. Did the Trial Court err in finding a fraudulent inducement?

3. Did the Trial Court err in failing to find that the purchasers had waived their right to claim there were misrepresentations which induced them to purchase the property?

4. Did the Trial Court err in failing to find that the purchasers were estopped to assert a misrepresentation, which misrepresentation was in contravention of the terms of purchasers' offer which was then accepted by the sellers?

5. Did the Trial Court err in finding a negligent misrepresentation?

6. Did the Trial Court err in failing to consider contributory negligence after finding that there had been a negligent misrepresentation?

7. Did the Trial Court err in awarding damages which included new replacements for the Culligan water treatment system, the reverse osmosis system and the water heater which were all operable?

8. Did the Trial Court err in failing to award the sellers attorney's fees for purchasers' breach of contract in bringing this lawsuit?

The purchasers state three issues:

1. What is the standard for reviewing the sufficiency of the evidence when the [sellers] argue that the District Court erred in its factual findings or in failing to find for the [sellers] in support of their positions?

2. Do the Trial Court's findings of fact and all other relevant evidence in this case support the conclusions of law made by the Court with regard to fraud in the inducement of the subject real estate contract by negligent misrepresentation and non-disclosure of material facts concerning the water supply?

3. When a ruling is made that there was fraud in the inducement which precedes the affirmance of a real estate contract, can the subsequently made terms of the contract itself be of any relevance or otherwise constitute a defense for the perpetrator of the fraud?

### FACTS

In June of 1990, Scott and Deborah Patrick (the Patricks) became interested in purchasing a home owned by Douglas and Loretta Richey (the Richeys) in Lander, Wyoming. A well supplied the home with water. Since the water was hard, the home was equipped with a Culligan water treatment unit. Mrs. Patrick looked at the home on June 21, and they made an offer on June 22. Three days later that offer was accepted by the Richeys.

Unbeknownst to the Patricks, the Richeys had experienced problems with black sediment coming through the well system. Twice the sediment had oozed out of the outside spigots when they were left on for long periods of time. Once the Richeys' renter had black sediment come into the bathtub, apparently because she had failed to maintain the Culligan unit. After each inci-

dent, the sediment problem went away after the Culligan man cleaned the treatment unit and replaced its filters.

Prior to making their offer on the house, the Patricks asked the real estate agent how the water was; and the agent told them that it was hard.[1] The Patricks did not ask the real estate agent or attempt to contact the Richeys prior to closing on the house about the well, the Culligan system or ask if there had been any problems with sediment.

The contract signed by the Patricks contained the following provisions:

IX.  CONDITION OF THE PROPERTY.

A.  Seller represents that upon execution of this Contract:

1.  There are no known violations of applicable city, county and/or state subdivision, zoning, building and/or public health codes, ordinances, laws, rules and regulations and any recorded covenants in force and effect as of that date except: *none known*

2.  Property Condition Statement. (check a. or b.)

\*      \*      \*      \*      \*      \*

*xx*  b.  A Property Condition Statement is not available.  Purchasers are purchasing said property upon their own judgment and inspection in its present condition, and hereby waive any defects in the condition of the property, known or unknown.

3.  Seller agrees to permit all electrical, mechanical, structural and/or environmental inspections of the property by Purchaser or third persons acting on behalf of Purchaser, at reasonable times and upon that notice required by Section X, Paragraph 1, below. Any such inspections shall be without expense to Seller unless otherwise agreed in writing.

B.  Purchaser acknowledges and agrees that, upon execution of this Contract:

1.  Purchaser is not relying upon any representations of the Seller or Seller's agents or sub-agents as to any condition which Purchaser deems to be material to Purchaser's decision to purchase this property;  and

2.  Purchaser has been advised by Seller's agents of the opportunity to seek legal, financial, construction, environmental and/or home inspection professional services regarding this purchase.

3.  Purchaser has received a copy of and hereby approves all covenants of record.

X.  INSPECTIONS.

1.  Purchasers may obtain, at Purchaser's option and expense and upon the notice required herein, electrical, mechanical, structural and/or environmental inspections of the property. Purchaser or Purchaser's agents or inspectors shall not have access to the property for such inspections unless and until Purchaser has provided written notice to Broker of the type(s) of inspections, name(s) of inspectors and the date upon which such inspection(s) shall be performed.  Purchaser must provide such notice on or before the 9th day of July, 1990, or it shall be deemed that the Purchaser approves and accepts the conditions of the property and waives any defects thereof.

2.  If Purchaser does have any inspection performed, Purchaser agrees to provide a copy of any written report of such inspection to Broker and to pay for any damage to the property caused by such inspection.  Purchaser shall provide any written objections to the condition of the property on or before the 16th day of July, 1990.  If no written objections are received by Broker within such period it shall be deemed that Purchaser approves and accepts the condition of the property and waives any defects thereof.

3.  If written notice of any objection to the condition of the property, signed by Purchaser, is delivered to Broker within such period and if Seller and Purchaser have not executed a written agreement

---

**1.**  There is no dispute about the veracity of that reply.  Also, at trial Mrs. Patrick stated that when she asked the question she was, in fact, inquiring about the hardness of the water.

which satisfies and resolves such objection(s) on or before the 23rd day of July, 1990, this contract shall be void and the earnest money deposit shall be returned to Purchaser.

4. Other than written objections raised by Purchaser as set out above, or in the event no inspections are required by Purchaser, Purchaser acknowledges that he has not been denied any opportunity to inspect property and has done so to his satisfaction. Purchaser accepts the property in its entirety in "as is, where is" condition without any implied or express warranty by Seller or Agent.

(Underlined type in original.) The Patricks admitted that they did not, or attempt to, do any inspections of any kind on the property.

After closing, the Patricks discovered black sediment in the water when they attempted to clean the carpet. An inspection of the Culligan unit disclosed that it was clogged with the sediment. The Patricks contacted a plumber who replaced the Culligan unit with one made by Kinetico. It took several more months before the plumber was finally able to solve the problem, and in the interim the Patricks had to have water brought to the house. The Patricks encountered another problem with the sediment shortly before trial which took six weeks to correct.

The Patricks brought this action raising claims of breach of contract, fraud, deceit, misrepresentation and nondisclosure. The district court found for the Patricks and awarded damages for costs incurred in fixing the sediment problem. The court also found that the Patricks were "fraudulently induced" into entering the contract and declared the contract void *ab initio*. The Richeys appeal.

## DISCUSSION

The resolution of this case depends upon a determination of which of several interrelated but distinct torts should be the basis of reviewing the lower court's judgment since that judgment does not articulate the theory

upon which it was found the Patricks should recover. The Patricks raised claims based on fraud, misrepresentation and nondisclosure. Thus our first task is to attempt to discern from the judgment which theory was the basis of the Patricks' judgment.

The district court found the following:

2. The [Richeys] failed to disclose material facts concerning the water system that they knew might justifiably induce a purchaser to enter into a contract into which he might not otherwise enter. The omission of the material facts amounts to a misrepresentation as though the defendants had actually misstated the nonexistence of the matter they failed to disclose.

3. The [Patricks] justifiably and reasonably relied upon the omitted facts concerning the true nature of the water system of the subject premises and were thereby induced into entering into the subject contract with the defendants.

4. The facts omitted by the [Richeys] regarding the true nature of the water system were negligent.

\* ' \* \* \* \* \*

9. The [Patricks] were fraudulently induced into entering into the aforesaid contract with the [Richeys], and, therefore, this action is in tort and not in contract and the contract is void ab initio and of no force and effect.

In reality there are only two main categories of torts involved here: misrepresentation and nondisclosure, either of which can be negligent or fraudulent in nature. *See* Restatement, Second, Torts (1977) §§ 525 (fraudulent misrepresentation or deceit); 550 (fraudulent concealment); 551 (nondisclosure); 552 (negligent misrepresentation).[2]

The district court found that the information omitted was negligent but concluded that the Patricks were "fraudulently induced" into the contract. Despite the use of that language by the district court, there was no fraud in this case. Fraud requires a

---

2. The distinctions are important. Unlike negligence, fraud must be pled with particularity and proved by clear and convincing evidence.

W.R.C.P. 9(b); *Duffy v. Brown*, 708 P.2d 433, 437 (Wyo.1985).

finding that a party made a representation with the intent to induce action by another. *Garner v. Hickman,* 709 P.2d 407, 410 (Wyo. 1985); Restatement, Second, Torts §§ 525 & 550. The specific finding that the omission was negligent automatically precludes a finding of the scienter required for fraud since, by definition, negligence is not intentional. *Kobos by and through Kobos v. Everts,* 768 P.2d 534, 538 (Wyo.1989) ("Intent is not a factor of negligence since negligence precludes intended conduct."). After a careful review of the record, we are satisfied that there is no evidence to support any finding of fraud on the part of the Richeys.

■■■■ On appeal, both parties have assumed that the district court decided the case on a theory of negligent misrepresentation. In order for there to have been a negligent misrepresentation, the plaintiff must show that

> [o]ne who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, *supplies false information* for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

Restatement, Second, Torts, § 552(1) (emphasis supplied); *Duffy v. Brown,* 708 P.2d 433, 437 (Wyo.1985). The Richeys did not supply false information to the Patricks. In fact, the Richeys did not supply *any* information to the Patricks. A nondisclosure of information cannot support a claim for misrepresentation; since nothing has been represented, an essential element of the claim is missing. *Burman v. Richmond Homes Ltd.,* 821 P.2d 913, 919 (Colo.App.1991).

The crux of the Patricks' complaint is that the Richeys should have informed them of prior sediment problems with the well, *i.e.,* the Richeys owed the Patricks a duty to disclose, and their nondisclosure breached that duty resulting in damages. The appropriate claim in this case is one for nondisclosure:

## Liability for Nondisclosure

(1) One who fails to disclose to another a fact that he knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to the same liability to the other as though he had represented the nonexistence of the matter that he has failed to disclose, if, but only if, he is under a duty to the other to exercise reasonable care to disclose the matter in question.

(2) One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated,

> (a) matters known to him that the other is entitled to know because of a fiduciary or other similar relation of trust and confidence between them; and

> (b) matters known to him that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading; and

> (c) subsequently acquired information that he knows will make untrue or misleading a previous representation that when made was true or believed to be so; and

> (d) the falsity of a representation not made with the expectation that it would be acted upon, if he subsequently learns that the other is about to act in reliance upon it in a transaction with him; and

> (e) facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts.

Restatement, Second, Torts § 551. We have never had a previous opportunity to determine whether § 551 can be the basis of a cause of action in this state. Since we conclude that even if we accepted the Restatement the Patricks' claim would fail, we do not need to make that determination today. However, we do note that a majority of

jurisdictions have either accepted § 551 of the Restatement or cited it with approval.[3]

The question of whether in a contract for sale an "as is" clause protects a seller from claims of negligent nondisclosure has never before been addressed by this court, though courts in two other jurisdictions have done so. In *Kaye v. Buehrle*, 8 Ohio App.3d 381, 457 N.E.2d 373, 375–76 (1983), the Ohio appellate court concluded that an "as is" contract, coupled with a right to inspect clause, placed the risk of a leaky basement on the buyer. The rationale for that result can be found in Comment j to § 551 of the Restatement, Second, Torts:

> If the parties expressly or impliedly place the risk as to the existence of a fact on one party or if the law places it there by custom or otherwise the other party has no duty of disclosure.

*Kaye*, 457 N.E.2d at 376. This rule, of course, only applies to negligent nondisclosure. In the case of an actual misrepresentation or fraud, then an "as is" clause will not relieve the seller of liability. *Id.; see also Mackintosh v. Jack Matthews & Co.*, 109 Nev. 628, 855 P.2d 549, 552–53 (1993); *Stemple v. Dobson*, 184 W.Va. 317, 400 S.E.2d 561, 566–67 (1990). A Wisconsin court reached the same result as the court in *Kaye* noting that:

> [W]hile the "as is" clause is not a complete bar to these causes of action, its effect is to put the burden upon a buyer to determine the condition of the property purchased. [*Omernik v. Bushman*, 151 Wis.2d 299, 444 N.W.2d 409 (1989).] This shifting of the burden, with nothing more [*i.e.*, misrepresentations or fraud], protects a seller and his or her agent from claims premised upon nondisclosure. *See, e.g., Kaye v. Buehrle*, 8 Ohio App.3d 381 [383], 457 N.E.2d 373 (1983).

*Grube v. Daun*, 173 Wis.2d 30, 496 N.W.2d 106, 117 (1992). Furthermore, two other courts, in dicta, have concurred with the reasoning expressed by the Ohio and Wisconsin courts: *Raynor v. United States*, 604 F.Supp. 205, 209 (1984) (absent allegation of fraud or misrepresentation of the condition of a house sold "as is," caveat emptor applies); *Wilhite v. Mays*, 239 Ga. 31, 235 S.E.2d 532, 533 (1977) (court expressed "apprehension" about an appellate court's rule that passive concealment was an exception to the rule of caveat emptor and rejected rule concluding that the nondisclosure under the facts of the case constituted fraud).

It has been suggested by some authorities that the Ohio rule is a minority one. Frank J. Wozniak, Annotation, *Construction and Effect of Provision in Contract for Sale of Realty by Which Purchaser Agrees to Take Property "as is" or in its Existing Condition*, 8 A.L.R.5th 312 § 4 (1992). However, an examination of the cases cited therein demonstrates that, in fact, the only courts that have directly addressed the issue in

**3.** *See Matthews v. Kincaid*, 746 P.2d 470, 471–72 (Alaska 1987); *Frazier v. Southwest Sav. & Loan Ass'n*, 134 Ariz. 12, 653 P.2d 362, 367–68 (1982); *Burman v. Richmond Homes Ltd.*, 821 P.2d 913, 918 (Colo.App.1991); *Wedig v. Brinster*, 1 Conn. App. 123, 469 A.2d 783, 788 (1983); *Molokoa Village Dev. Co., Ltd. v. Kauai Elec. Co., Ltd.*, 60 Haw. 582, 593 P.2d 375, 381 (1979); *Tusch Enterprises v. Coffin*, 113 Idaho 37, 740 P.2d 1022, 1026–28 (1987); *Peoples Bank & Trust Co. v. Lala*, 392 N.W.2d 179, 187–88 (Iowa App. 1986); *Finch v. Hughes Aircraft Co.*, 57 Md.App. 190, 469 A.2d 867, 888 (1984), *cert. denied* 300 Md. 88, 475 A.2d 1200 (1984); *Underwood v. Risman*, 414 Mass. 96, 605 N.E.2d 832, 836 (1993); *U.S. Fidelity & Guaranty Co. v. Black*, 412 Mich. 99, 313 N.W.2d 77, 89 (Mich.1981); *Vikse v. Flaby*, 316 N.W.2d 276, 283 (Minn.1982); *Kitchen Krafters v. Eastside Bank*, 242 Mont. 155, 789 P.2d 567, 573 (1990); *Bank of Valley v. Mattson*, 215 Neb. 596, 339 N.W.2d 923, 927 (1983); *Strawn v. Canuso*, 271 N.J.Super. 88, 638 A.2d 141, 149 (1994); *R.A. Peck, Inc. v. Liberty Fed. Sav. Bank*, 108 N.M. 84, 88, 766 P.2d 928, 932 (1988); *Dewey v. Lutz*, 462 N.W.2d 435, 440 (N.D.1990); *Kaye v. Buehrle*, 8 Ohio App.3d 381, 457 N.E.2d 373, 375–76 (1983); *Slaybaugh v. Newman*, 330 Pa.Super. 216, 479 A.2d 517, 521 (1984); *Maybee v. Jacobs Motor Co., Inc.*, 519 N.W.2d 341, 344 (S.D.1994); *Patton v. McHone*, 822 S.W.2d 608, 614–16 (Tenn.App. 1991); *Castillo v. Neely's TBA Dealer Supply, Inc.*, 776 S.W.2d 290, 295 (Tx.App.1989); *First Sec. Bank v. Banberry Dev. Corp.*, 786 P.2d 1326, 1330–31 (Utah 1990); *Pearson v. Simmonds Precision Products, Inc.*, 624 A.2d 1134, 1135–36 (Vt.1993); *Ware v. Scott*, 220 Va. 317, 257 S.E.2d 855, 858 (1979); *Haberman v. Pub. Power Supply Sys.*, 109 Wash.2d 107, 744 P.2d 1032, 1070 (1987), *appeal dismissed* 488 U.S. 805, 109 S.Ct. 35, 102 L.Ed.2d 15 (1988); *Ollerman v. O'Rourke Co., Inc.*, 94 Wis.2d 17, 288 N.W.2d 95, 100 (1980).

regard to negligent nondisclosure reach the same result as that reached by the court in *Kaye. See also Grube.* A review of the cases cited by the annotation which are supposedly to the contrary discloses that each involved fraud or misrepresentation, not negligent nondisclosure. *See for example, Wilson v. Century 21 Great Western Realty,* 15 Cal.App.4th 298, 18 Cal.Rptr.2d 779 (1993) (fraud); *Rayner v. Wise Realty Co.,* 504 So.2d 1361 (Fla.App.1987) (misrepresentation and fraudulent nondisclosure); *Ferguson v. Cussins,* 713 S.W.2d 5 (Ky.App.1986) (fraudulent inducement); *Sheehy v. Lipton Industries, Inc.,* 24 Mass.App. 188, 507 N.E.2d 781 (1987) (misrepresentations); *V.S.H. Realty, Inc. v. Texaco, Inc.,* 757 F.2d 411 (1st Cir. 1985) (misrepresentation); *Gopher Oil Co., Inc. v. Union Oil Co.,* 955 F.2d 519 (8th Cir.1992) (fraud); *Wagner v. Cutler,* 232 Mont. 332, 757 P.2d 779 (1988) (misrepresentations); *Holmes v. Couturier,* 452 N.W.2d 135 (S.D.1990) (fraud in the inception); *Stemple v. Dobson,* 184 W.Va. 317, 400 S.E.2d 561 (1990) (fraud).

We find the Ohio cases to be persuasive and, in concurrence with every other jurisdiction which has addressed this issue, hold that absent an allegation of fraud, an "as is" clause bars a claim for nondisclosure.

In this case, the burden of discovering defects in the property was placed upon the Patricks. The contract stated that the "Purchaser accepts the property in its entirety in 'as is, where is' condition without any implied or express warranty by Seller or Agent." The contract also provided for inspections by experts hired by the Patricks, of which they failed to take advantage. The Patricks also failed to look at the water system, ask about the condition of the well, or even turn on a faucet. The Patricks were provided an opportunity to obtain information on the house; and in their rush to purchase, they simply failed to do so. Since the burden of discovery was placed on the Patricks under the contract, they are barred from seeking relief based on negligent nondisclosure.

### CONCLUSION

A contract to sell realty, which contains an "as is" clause, bars any claims for nondisclo-

sure absent the existence of fraud or misrepresentations. There being no evidence of fraud on the part of the Richeys, the decision of the district court is hereby reversed.

THOMAS and MACY, JJ., each filed separate dissenting opinions.

THOMAS, Justice, dissenting.

I would affirm the decision of the trial court in this case. The majority opinion quotes the RESTATEMENT (SECOND) OF TORTS § 551 (1977), op. at 802, and states that the majority of jurisdictions have adopted that rule. I would opt to adopt that majority rule.

The adoption of the RESTATEMENT (SECOND) OF TORTS § 551 is consistent with Wyoming precedent. In *Twing v. Schott,* 80 Wyo. 100, 115, 338 P.2d 839, 844 (1959), the court dealt with a response by a seller of real estate to the purchaser's inquiry about the water, saying:

Perhaps the obligation of a party to make a full and fair disclosure if he discloses at all is also applicable to the words of defendant Schott regarding the water which was to be used on the premises. True, his statement was somewhat equivocal; and when he said that it was "city water" he may have in a manner of speaking been giving it a proper designation since the water was originally brought through the city lines, but the fact of there having been at that time some trouble and misunderstanding about the water would seem to have placed upon him in all fairness an obligation to disclose all facts.

This case falls within the contemplation of RESTATEMENT (SECOND) OF TORTS § 551 which provides:

(2) One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated,

\*     \*     \*     \*     \*     \*

(e) facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other

objective circumstances, would reasonably expect a disclosure of those facts.

That provision, if followed, leads to affirming the decision of the trial court. The comments on clause (e), following this section of the RESTATEMENT (SECOND) OF TORTS, lend assistance in its application. Pertinent comments read:

**Comment on Clause (e):**

*j. "Facts basic to the transaction."* The word "basic" is used in this Clause in the same sense in which it is used in Comment *c* under § 16 of the Restatement of Restitution. A basic fact is a fact that is assumed by the parties as a basis for the transaction itself. It is a fact that goes to the basis, or essence, of the transaction, and is an important part of the substance of what is bargained for or dealt with. Other facts may serve as important and persuasive inducements to enter into the transaction, but not go to its essence. These facts may be material, but they are not basic. If the parties expressly or impliedly place the risk as to the existence of a fact on one party or if the law places it there by custom or otherwise the other party has no duty of disclosure. * * *

**Illustrations:**

3. A sells to B a dwelling house, without disclosing to B the fact that the house is riddled with termites. This is a fact basic to the transaction.

\* \* \* \* \* \*

**Comment:**

*k. Nondisclosure of basic facts.* The rule stated in Subsection (1) reflects the traditional ethics of bargaining between adversaries, in the absence of any special reason for the application of a different rule. When the facts are patent, or when the plaintiff has equal opportunity for obtaining information that he may be expected to utilize if he cares to do so, or when the defendant has no reason to think that the plaintiff is acting under a misapprehension, there is no obligation to give aid to a bargaining antagonist by disclosing what the defendant has himself discovered. To a considerable extent, sanctioned by the customs and mores of the community, su-perior information and better business acumen are legitimate advantages, which lead to no liability. The defendant may reasonably expect the plaintiff to make his own investigation, draw his own conclusions and protect himself; and if the plaintiff is indolent, inexperienced or ignorant, or his judgment is bad, or he does not have access to adequate information, the defendant is under no obligation to make good his deficiencies. This is true, in general, when it is the buyer of land or chattels who has the better information and fails to disclose it. **Somewhat less frequently it may be true of the seller.** (Emphasis added.)

\* \* \* \* \* \*

*l.* The continuing development of modern business ethics has, however, limited to some extent this privilege to take advantage of ignorance. There are situations in which the defendant not only knows that his bargaining adversary is acting under a mistake basic to the transaction, but also knows that the adversary, by reason of the relation between them, the customs of the trade or other objective circumstances, is reasonably relying upon a disclosure of the unrevealed fact if it exists. In this type of case good faith and fair dealing may require a disclosure.

It is extremely difficult to be specific as to the factors that give rise to this known, and reasonable, expectation of disclosure. In general, the cases in which the rule stated in Clause (e) has been applied have been those in which the advantage taken of the plaintiff's ignorance is so shocking to the ethical sense of the community, and is so extreme and unfair, as to amount to a form of swindling, in which the plaintiff is led by appearances into a bargain that is a trap, of whose essence and substance he is unaware. In such a case, even in a tort action for deceit, the plaintiff is entitled to be compensated for the loss that he has sustained. Thus a seller who knows that his cattle are infected with tick fever or contagious abortion is not free to unload them on the buyer and take his money, when he knows that the buyer is unaware of the fact, could not easily discover it,

would not dream of entering into the bargain if he knew and is relying upon the seller's good faith and common honesty to disclose any such fact if it is true.

There are indications, also, that with changing ethical attitudes in many fields of modern business, the concept of facts basic to the transaction may be expanding and the duty to use reasonable care to disclose the facts may be increasing somewhat. This Subsection is not intended to impede that development.

**Illustrations:**

9. A sells B a dwelling house, without disclosing the fact that drain tile under the house is so constructed that at periodic intervals water accumulates under the house. A knows that B is not aware of this fact, that he could not discover it by an ordinary inspection, and that he would not make the purchase if he knew it. A knows also that B regards him as an honest and fair man and one who would disclose any such fact if he knew it. A is subject to liability to B for his pecuniary loss in an action of deceit.

\* \* \* \* \* \*

*m. Court and jury.* Whether there is a duty to the other to disclose the fact in question is always a matter for the determination of the court. If there are disputed facts bearing upon the existence of the duty, as for example the defendant's knowledge of the fact, the other's ignorance of it or his opportunity to ascertain it, the customs of the particular trade, or the defendant's knowledge that the plaintiff reasonably expects him to make the disclosure, they are to be determined by the jury under appropriate instructions as to the existence of the duty.

A more complete statement of the facts and the decision of the trial court is useful in analyzing the issues in this case. The Richeys acquired the rural residential property involved in this case in 1984, and they lived there until 1989. In the spring of 1985, the Richeys experienced a problem with black sediment in the water supply. They dealt with that problem by having a serviceman clean the head of the water softener, rerouting the plumbing to accommodate irrigation

of the lawn, and not using the well for a few days.

Again, in 1986, the Richeys encountered a serious problem with black sediment in the water system. An outside faucet was left on which caused the water system to be without pressure and the sediment to be deposited on the ground beneath that faucet. Again, a serviceman found black sediment on the heads of the water softener. The Richeys then replaced the existing water softener head with a newer model.

During the time they lived in this home, Mr. Richey diligently maintained the water system. He replenished the salt bin and a solution and changed the prefilter every month during the summer and every other month during the winter. The Richeys did not experience the problem with black sediment again while they lived in the home. They did not limit their use of water which included bathing, laundry, kitchen use, including the dish washer, and irrigation of the lawn and some trees and shrubs.

In the fall of 1989, the Richeys listed the property for sale with Hugh Jones Realty. They moved to Montana and, subsequently, rented the rural residence. At the time they listed the property for sale, the Richeys did not disclose the problems with sediment, the need to limit the use to conserve water, and the diligence and procedures required to maintain the water system.

The first renters from the Richeys lived in the residence from January through April, 1990. They experienced problems of black sediment in the toilet and bathtub on one occasion and complained about it. Mr. Richey ascertained that the tenants were not performing the water system maintenance. Again, the serviceman changed the water filter which the tenant testified was coal black. After that, the serviceman was engaged to conduct monthly maintenance, which remedied the problem of black sediment for the remaining time those tenants lived there. They did complain to the Richeys, though, that the reverse osmosis system didn't supply enough water for their needs. The Richeys advised the tenants that problem could not be remedied. Those tenants

also were cautioned not to water certain plants because the water would cause the plants to die.

Even though the system was serviced by a serviceman, Mr. Richey still discovered the filter on the system needed to be changed, and all of the supplies had to be replenished after those tenants moved. A second tenant lived in the residence for two months during the summer of 1990 and did not experience any problems with the black sediment.

During the time the second tenant lived in the home, Mrs. Patrick viewed the house accompanied by a real estate agent for Pride Realty, a member of the local multiple listing service. Prior to viewing the residence, Mr. and Mrs. Patrick had discussed problems with water in other rural properties and had rejected them because of those water problems. Because of their discussions about water problems in real properties, Mrs. Patrick asked the real estate agent "how the water was" before she viewed the property. The agent testified as to her interpretation of that question: "Does it have water? Is it on a cistern or a well? And if it's on a well, how is the water? Is there enough water and is the water of a quality that you can use?" Subsequently, the showing agent called the listing agent and inquired about the water. The listing agent advised the water was hard, and the home had a reverse osmosis system. Problems with sediment were not known by the listing agent and, therefore, they were not mentioned.

The next day, the Patricks submitted an offer to the Richeys with respect to this property. The standard "Offer, Acceptance and Receipt Specific Performance Contract (Residential)" was used for this purpose. The provisions of the offer relevant to our disposition included a paragraph that a property condition statement was not available, and it specified that the "purchasers are purchasing said property upon their own judgment and inspection in its present condition, and hereby waive any defects in the condition of the property, known or unknown." The contract provided the seller would permit inspections by the purchaser or third persons acting on behalf of the purchaser. The form also stated the purchaser

acknowledged and agreed that "[p]urchaser is not relying upon any representations of the Seller or Seller's agents or sub-agents as to any condition which Purchaser deems to be material to Purchaser's decision to purchase this property * * *." The section titled "Inspection," which related to the right of the purchasers to obtain an inspection, provided a copy of any written report would be made available to the broker and provided a right of rejection by the purchaser. Among other matters this section provided:

4. Other than written objections raised by Purchaser as set out above, or in the event no inspections are required by Purchaser, Purchaser acknowledges that he has not been denied any opportunity to inspect property and has done so to his satisfaction. Purchaser accepts the property in its entirety in "as is, where is" condition without any implied or express warranty by Seller or Agent.

After the offer was submitted, but prior to the time it was accepted, Mr. Patrick viewed the house and asked, "[h]ow is the water?" The showing agent replied at least twice, "[t]he water is very hard." No other information was provided and, three days after the Patricks made the offer, it was accepted by the Richeys. After the sale closed, but before they moved into the property, the Patricks discovered black sediment when they drew water for the purpose of cleaning the carpets. An inspection of the water treatment unit disclosed it was clogged with the black sediment. The Patricks contacted a plumber, but he was unable to solve the problem. After several months, he did solve the problem but, during that interim, the Patricks were required to haul water to the house. The Patricks encountered another problem with the sediment shortly before the trial, and that problem required six weeks to correct.

The Patricks filed this action against the Richeys, asserting claims of breach of contract, rescission, fraud, and misrepresentation. The Patricks based their complaint on the proposition that the Richeys owed them a duty to disclose the basic facts relating to the sediment problems, and their failure to dis-

close that fact constituted a breach of the duty and caused damages to the Richeys.

The trial court found for the Patricks, and among its Findings of Fact are:

3. The defendant did not mention to the plaintiffs nor to the listing agent Hugh Jones nor to any of his agents or employees that they had experienced problems with the water system with regard to a shortage of water or a grey or black sediment which would come through the water system from time to time. Neither did the defendants explain to the plaintiffs or any of their real estate agents or employees that certain procedures and regular filter changes were necessary to prevent or regulate the grey or black substances from coming through the water system. Consequently, the plaintiffs were not informed about such problems with the water system.

4. The plaintiffs, prior to the sale, inquired of the selling agent for Pride Realty, Sally Davis, as to the condition of the water at the premises prior to entering into a contract with the defendants or making the offer to purchase the property from the defendants, and were told that the water was "adequate but hard."

\* \* \* \* \* \*

7. On the day the plaintiffs took possession of the property \* \* \*. Within a short period of time that day large quantities of grey and black sediment started coming through the water lines and the machine and onto the carpets.

\* \* \* \* \* \*

11. After months of research, testing, consultation, and investigation, a water system was installed by Kinetico that has, for the most part, solved the problem with some maintenance costs and time involved, at a cost of $11,422.40 to the plaintiffs.

In its Conclusions of Law, the trial court said:

1. The condition of the water system of the subject premises is a material fact to be considered by any prospective purchaser of the real property, and, the defendants should have revealed the prior problems with black sediment in the water system referred to herein, as well as the shortage of water from time to time, and the necessity of regularly changing the filters to avoid having any sediment at all come through the system.

2. The defendants failed to disclose material facts concerning the water system that they knew might justifiably induce a purchaser to enter into a contract into which he might not otherwise enter. The omission of the material facts amounts to a misrepresentation as though the defendants had actually misstated the nonexistence of the matter they failed to disclose.

3. The plaintiffs justifiably and reasonably relied upon the omitted facts concerning the true nature of the water system of the subject premises and were thereby induced into entering into the subject contract with the defendants.

\* \* \* \* \* \*

6. The defendants owed a duty to the plaintiffs to disclose all facts concerning the water system because such facts are material and are basic to the transaction for the purchase and sale of a house when a buyer is about to enter into the contract under a mistake as to the facts.

7. The customs of the real estate trade and the circumstances of this transaction, as well as the law in the State of Wyoming, dictate that the true facts concerning the quality and quantity of the water source be made known to any prospective buyer of real estate.

The approach reflected in the Judgment entered in the trial court follows precisely the RESTATEMENT (SECOND) OF TORTS § 551(1):

One who fails to disclose to another a fact that he knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to the same liability to the other as though he had misrepresented the nonexistence of the matter that he has failed to disclose, if, but only if, he is under a duty to the other to exercise reasonable care to disclose the matter in question.

Mr. Richey, his selling agent, and a real estate broker with thirty-two years of experience all testified that the quality and quantity of the water in a residential rural property were important in selling real estate in Fremont County. I reiterate that a basic fact as one:

> [T]hat is assumed by the parties as a basis for the transaction itself. It is a fact that goes to the basis, or essence, of the transaction, and is an important part of the substance of what is bargained for or dealt with.

Comment *j* to the RESTATEMENT (SECOND) OF TORTS § 551(2)(e).

The trial court treated the failure of the Richeys to reveal prior problems with black sediment in the water system as well as shortage of the water from time to time and the necessity of regularly changing the filter to avoid having any sediment come through the system as a failure to disclose basic facts. The decision of the trial court is consistent with the rule of good faith that attaches to contracts for the transfer of real estate. *Stockton v. Sowerwine*, 690 P.2d 1202 (Wyo. 1984); *Wendling v. Cundall*, 568 P.2d 888 (Wyo.1977).

Agreeing that the nature of the water supply is a basic fact, the other elements of nondisclosure are clear to me. First, the Richeys were in a seller/purchaser relationship with the Patricks in a business transaction. The Richeys were aware of ongoing problems with sedimentation in 1985, 1986, and the winter of 1990, and they knew that continuous and diligent maintenance of the water system was required. They did not disclose that fact to the Patricks or the real estate broker nor any of his agents so that it could be conveyed to the Patricks. The Richeys had a duty to exercise reasonable care to disclose the existence of the sediment. Further, the Patricks reasonably could expect disclosure of those facts, especially when they inquired about the water.

General principles of agency law provide that, even if the response of the agent is innocent, the liability for its inaccuracy falls upon the seller. Had the question of the Patricks, "[h]ow is the water," been directly addressed to the Richeys, they could not justify their failure to make a complete response. Neither can they avoid liability because the failure to make the complete response was the failure of the agent.

The majority, relying upon Ohio cases, concludes that the "as is" clause in the contract would shield the Richeys from liability for non-disclosure. The reliance by the majority upon Ohio law is significantly diminished upon analysis of *Wilson v. Zender*, No. 14263, 1991 WL 11602 (Ohio Ct.App.1991). While the rationale appears to refute the theory of nondisclosure, the fact remains that the plaintiffs were awarded judgment in that case for constructive fraud. The logical inference is that the Ohio court, in a case with facts like this case where specific inquiry was made, would adopt the theory of liability for non-disclosure if it were alleged. I would rule that *Kaye v. Buehrle*, 457 N.E.2d 373 (Ohio Ct.App.1983), if not distinguishable, was not correctly decided, since the rule adopted by the courts whose decisions are cited in Frank J. Wozniak, Annotation, *Construction and Effect of Provision in Contract for Sale of Realty by which Purchaser Agrees to Take Property "as is" or in its Existing Condition*, 8 A.L.R.5th 312 § 4 (1992), is clearly more fair.

A minority of jurisdictions have adopted this philosophy, but we should not. The strict common law doctrine of *caveat emptor* has lost much of its thrust which was premised upon an individualistic philosophy associated with freedom of contract.

> In the present stage of the law, the decisions show a drawing away from this idea, and there can be seen an attempt by many courts to reach a just result in so far as possible, but yet maintaining the degree of certainty which the law must have. The statement may often be found that if either party to a contract of sale conceals or suppresses a material fact which he is in good faith bound to disclose then his silence is fraudulent.

W. Page Keeton, *Fraud—Concealment and Non-disclosure*, 15 Tex.L.Rev. 1, 31 (1936).

Other courts have ruled an "as is" provision in a contract for the sale of real estate will not serve to relieve a vendor of the

obligation to disclose a condition which substantially affects the value or habitability of the property, was known to the vendor, but not the purchaser, and which would not be disclosed by reasonable and diligent inspection. These cases are discussed in the Annotation in 8 A.L.R.5th 312 § 4.[1] It is a just rule that in circumstances like this case a negligent failure to disclose is treated the same as an affirmative misstatement made with the intention to mislead.

The trial court was not definitive as to whether it was relying upon misrepresentation or non-disclosure, but it is clear that it was treating the claim as one sounding in tort. The general rule in tort cases is that integration clauses in contracts which negate the existence of any representations not incorporated into the contract may not be invoked to escape liability for misrepresentations. *Grube v. Daun*, 173 Wis.2d 30, 496 N.W.2d 106 (1992).

As a matter of public policy, disclaimers in contracts will not be honored unless the disclaimer is specific with respect to the tort disclaimed, and it is apparent that an express bargain was struck to forgo possibility of tort recovery in exchange for negotiated alternative economic damages. *Grube.* The waiver of tort liability by the purchaser in such a contract is permitted, but only with knowledge and if bargained for in the exchange. We have said:

> The final Schutkowski factor requires us to determine whether the release agreement evidences the parties' intent to abrogate negligence liability in clear and unambiguous language. Generally, agreements designed to exculpate parties from negligence liability are disfavored for public

policy reasons, and we scrutinize such language closely. In Schutkowski we joined the majority of courts in holding that clear and unambiguous exculpatory language can eliminate negligence liability without expressly stating the word "negligence." *Schutkowski v. Carey* [725 P.2d 1057 (Wyo. 1986) ], supra, at 1062; * * *.

*Boehm v. Cody Country Chamber of Commerce*, 748 P.2d 704, 711 (Wyo.1987).

The exculpatory language, the "as is" clause, relied upon by the Richeys here is general form language found in the Offer, Acceptance and Receipt Specific Performance Contract (Residential), a standard form used in the real estate business.

The trial court in this case very perceptively adopted a recognized legal precept in awarding judgment to the Patricks. I would affirm the judgment for the reasons set forth above.

MACY, Justice, dissenting.

I dissent. I respectfully disagree with the policy of permitting a seller to hide behind an "as is" contract in order to justify not disclosing a material fact which would induce a buyer to refrain from buying the property.

The evidence is undisputed that the Richeys were well aware of the on-going problems with regard to the black sediment in their water system, and yet they did not say anything about the problems to their real estate agent or to the buyers. The evidence is also undisputed that, on separate occasions, the Patricks each inquired about the water supply at the Richey residence and were merely told that the water was hard. The evidence is clear that the water quality

---

**1.** *Wilson v. Century 21 Great W. Realty*, 15 Cal. App.4th 298, 18 Cal.Rptr.2d 779 (1993) (problems with the foundation); *Rayner v. Wise Realty Co. of Tallahassee*, 504 So.2d 1361 (Fla.Ct.App. 1987) (damage done to the home as a result of prior termite infestation); *Ferguson v. Cussins*, 713 S.W.2d 5 (Ky.Ct.App.1986) (badly rusted underground gasoline tanks); *Sheehy v. Lipton Indus., Inc.*, 24 Mass.App. 188, 507 N.E.2d 781 (1987) (hazardous waste problems); *V.S.H. Realty, Inc. v. Texaco, Inc.*, 757 F.2d 411 (1st Cir. 1985) (applying Massachusetts law to the problem of seeping oil at the east and west ends of the property); *Gopher Oil Co., Inc. v. Union Oil Co. of California*, 955 F.2d 519 (8th Cir.1992) (applying Minnesota law to the problem of misrepresentation by vendor that the real property was not subject to hazardous waste contamination); *Wagner v. Cutler*, 232 Mont. 332, 757 P.2d 779 (1988) (latent defects in the construction of a home); *Dygert v. Leonard*, 138 A.D.2d 793, 525 N.Y.S.2d 436 (1988) (extensive foundation repairs); *Holmes v. Couturier*, 452 N.W.2d 135 (S.D.1990) (defects in the septic tanks and electrical system); *Stemple v. Dobson*, 184 W.Va. 317, 400 S.E.2d 561 (W.Va.1990) (structural damage due to prior termite infestation); and *Grube v. Daun*, 173 Wis.2d 30, 496 N.W.2d 106 (1992) (gasoline contamination resulting from underground tank leak).

was a material fact for the Patricks to consider when they were purchasing the rural residence.

RESTATEMENT (SECOND) OF TORTS § 551 (1977) provides a just remedy which protects unwary buyers from sellers who fail to reveal known latent defects, even though the purchase contract contains an "as is" clause.

The majority opinion states that an "as is" clause should not bar a claim when an allegation of fraud or misrepresentation has been made. It seems to me that it is equally as wrong for sellers to fail to mention a known water problem as it is for them to fraudulently or negligently misrepresent that such a problem does not exist; i.e., it is as wrong to fail to tell the truth as it is to tell an untruth.