FRASER ENGINEERING COMPANY, INC. vs. ROBERT
MARC DESMOND.[1]

No. 87-1050.

Bristol. May 6, 1988. — June 6, 1988.

Present: GRANT, PERRETTA, & DREBEN, JJ.

*Consumer Protection Act,* Businessman's claim, Unfair act or practice,
Damages, Attorney's fees. *Fraud. Damages,* Attorney's fees, Consumer
protection case.

In an action against a real estate developer in which the plaintiff, after recov-
ering on a summary judgment against a subcontractor for the full amount
of its claim for the agreed price of repair work at the developer's construc-
tion site, sought to recover from the developer under G. L. c. 93A,
§§ 2(*a*) and 11, the reasonable amount of attorney's fees which the
plaintiff had expended in pursuing the subcontractor on the ground that
the plaintiff had agreed to perform its work only because it had been
assured, in the presence of the developer's project manager, that it would
be paid from proceeds of a claim covered by the developer's builder's
risk insurance, evidence warranted the judge's conclusions that the de-
veloper's conduct in failing to honor this assurance had been both unfair
and deceptive within the meaning of G. L. c. 93A, §§ 2(*a*) and 11.
[103-104]

CIVIL ACTION commenced in the Superior Court Department
on December 14, 1983.

The case was heard by *James P. McGuire,* J.

*Miriam Goldstein Altman* for the defendant.

*Kieran B. Meagher* for the plaintiff.

GRANT, J. The defendant is a real estate developer who at
all material times was engaged in the renovation of an elderly
seaside mansion in Dartmouth and its conversion into individual
apartments which would be sold to the public as condominium

---

[1] The defendant is the sole general partner of a limited partnership which
does business under the name Round Hill Associates.

units. To that end he entered into a general contract with Homar, Inc. (Homar), for the performance of most of the work which would be required in the course of the renovation and conversion. Homar entered into a subcontract with Denron Plumbing and Heating Co., Inc. (Denron), for the performance of the necessary heating work. Some time after Denron had undertaken the performance of its portion of the work, the basement of the mansion was flooded and substantial damage was done to the work and equipment supplied by Denron, as well as to the work and equipment supplied by other subcontractors engaged in various trades. The flooding may have resulted from the negligence of one Piva, who had been employed by the defendant directly to perform the necessary site preparation and landscaping.

At some point following the award of the heating subcontract to Denron but prior to the flooding, the principal of Denron, one Rowan, requested the principal of the plaintiff, one Fraser, to formulate and submit to Denron a proposal for the post-construction maintenance of the equipment which was to be installed by Denron. Fraser submitted such a proposal, but it was not accepted. After the flooding Rowan asked Fraser to examine the damage, to make recommendations as to what would be required to repair the damage, and to submit a proposal for whatever work and equipment might be required. Fraser revisited the site and examined the damage in the presence of Rowan, a representative of the mechanical engineer employed by the architect, and one Bettencourt, who was the defendant's project manager and who had been directed by him to oversee the repair or replacement of all the damaged material and equipment. Fraser inquired as to who would be the other contracting party and as to who would be responsible for paying the plaintiff if its proposal were to be accepted. Rowan, in the presence of Bettencourt, responded that the plaintiff would be paid from the proceeds of the defendant's claim under his builder's risk insurance but that the actual

contract would be issued by Denron. Bettencourt remained silent throughout this portion of the conversation.[2]

The plaintiff's proposal was accepted, and it entered into a written agreement with Denron for the reconditioning of two existing boilers, the installation of two new oil burners, and the installation of various electronic controls.[3] This was the first time the plaintiff had entered into a contractual relationship with Denron. The plaintiff performed the agreement in workmanlike fashion and demanded payment from Denron, which put the plaintiff off on the ground that it (Denron) had not received payment from Homar. That was not a legitimate excuse because the plaintiff's right to receive payment from Denron was not conditioned on the latter's first receiving payment from Homar.

The plaintiff then demanded payment from the defendant. Unbeknownst to the plaintiff, the defendant had decided not to seek recovery of its losses from his builder's risk insurer but to pursue Piva's liability insurer instead.[4] Following the completion of the plaintiff's work the defendant received from

---

[2] The defendant has abandoned his belated objections to Fraser's testimony on these subjects, and the case has been argued to us on the footing that the defendant is responsible for whatever consequences may flow from Bettencourt's silence. See generally *Ruszcyk* v. *Secretary of Pub. Safety*, 401 Mass. 418, 419-423 (1988). There is no question that the defendant authorized the agreement between the plaintiff and Denron or that he was kept abreast of the plaintiff's progress with the work.

[3] The agreement between the plaintiff and Denron did not take the form of a subsubcontract of a portion of the work which Homar owed the defendant under the original general contract and which it had subcontracted to Denron, undoubtedly because the agreement between the plaintiff and Denron called for repair and other work not contemplated by the general contract. The agreements between the plaintiff and Denron and between Denron and Homar were both executed on a form recommended by the American Institute of Architects for use in agreements between general contractors and their subcontractors.

[4] There was a $10,000 deductible in the builder's risk policy which could be avoided if full recovery could be had from Piva's insurer. The decision to pursue Piva's insurer was a matter of business judgment which is not questioned by the plaintiff. Correspondingly, the defendant does not seek to avoid responsibility on the ground that he received nothing from his builder's risk insurer.

Piva's insurer a partial payment of his total claim in an amount which was in excess of what was owed the plaintiff.[5] The defendant pocketed the insurance proceeds and refused to make any part of them available to the plaintiff. Three reasons were given. The first was that the defendant was under no contractual obligation to the plaintiff, which was correct so far as it was based on the fact that the plaintiff was not included in the original structure of the general contract and the Denron subcontract (see note 3, *supra*) but ignored the defendant's potential liability to the plaintiff arising out of the assurance that the plaintiff would be paid from the insurance recovery. The second reason for the refusal was that the defendant was by then engaged in a dispute with Homar and was entitled to retain the insurance proceeds because Homar had failed to perform the general contract, which also ignored the fact that the plaintiff was not part of the original contract structure. The third reason was that it would not be fair to pay the plaintiff at the expense of the other subcontractors, which ignored the facts (a) that the plaintiff was not one of the original subcontractors and (b) that it did not appear that the defendant had promised to pay any of the original subcontractors from any insurance proceeds which might be recovered.

The plaintiff brought suit against Denron and the defendant in the Superior Court. The first count of the amended complaint alleged a breach of the agreement between the plaintiff and Denron arising out of the latter's failure to pay the plaintiff the agreed price for its work and equipment. The second count was directed to the defendant and proceeded on a theory that the defendant had been unjustly enriched at the expense of the plaintiff to the extent of the fair value of the labor, material and equipment supplied by the plaintiff. The plaintiff obtained a summary judgment against Denron for the full amount of its claim, which Denron paid. The plaintiff then went forward on the count against the defendant to recover from him the reason-

---

[5] The total amount of the claim submitted to Piva's insurer reflected not only the amount of the plaintiff's claim, but also claims for flooding damage to the work which had been performed by subcontractors other than Denron.

able amount of the attorney's fees expended by the plaintiff in pursuing Denron. The case against the defendant was tried on the theory that the attorney's fees had necessarily been incurred as a result of the unfair and deceptive acts of the defendant (G. L. c. 93A, §§ 2[*a*] and 11) in assuring the plaintiff that it would be paid from insurance proceeds and then refusing to pay the plaintiff from that or any other source. An experienced judge of the Superior Court found and ruled that the defendant's conduct had been both unfair and deceptive within the meaning of §§ 2(*a*) and 11 and caused the entry of judgment for the plaintiff in an amount which is not contested. The defendant appealed, urging error in so much of the judgment as determined liability.

Neither the provisions of G. L. c. 93A, § 2(*a*), nor those of G. L. c. 93A, § 11, contain a definition of an unfair act or practice. Both leave the possible existence of such to be determined on a case-by-case basis. See *Commonwealth* v. *DeCotis*, 366 Mass. 234, 241, 242 (1974); *Purity Supreme, Inc.* v. *Attorney Gen.*, 380 Mass. 762, 771 (1980); *Levings* v. *Forbes & Wallace, Inc.*, 8 Mass. App. Ct. 498, 504 (1979). The judge, in finding that the defendant had committed an unfair act within the meaning of § 2(*a*), relied on the general definition of unfairness which was first approved in *PMP Associates, Inc.* v. *Globe Newspaper Co.*, 366 Mass. 593, 596 (1975), and later fleshed out in *Purity Supreme, Inc.* v. *Attorney Gen.*, 380 Mass. at 777. In doing so, he properly rejected the common law defences tendered by the defendant to the effect that the plaintiff had no cause of action in contract or quasi contract and that the plaintiff was not an insured under the defendant's builder's risk policy.[6] *Heller* v. *Silverbranch Constr. Corp.*, 376 Mass. 621, 625-626 (1978). See also *Nei* v. *Burley*, 388 Mass. 307, 313 (1983). We share the view, implicit in the judge's findings, that the defendant's refusal to carry through on his assurance that the plaintiff would be paid from insurance proceeds was both unethical and unscrupulous. See *Levings*

---

[6] We need not and do not pass on the validity of any of the supposed defences.

v. *Forbes & Wallace, Inc.*, 8 Mass. App. Ct. at 504; *Wasserman* v. *Agnastopoulos*, 22 Mass. App. Ct. 672, 679 (1986); *Zayre Corp.* v. *Computer Syss. of America, Inc.*, 24 Mass. App. Ct. 559, 570 (1987). We note that no question has been raised as to a causal relationship between the unfair act and the incurring of attorney's fees in the proceedings against Denron.

Nor do we find error in the judge's conclusion that the defendant, in giving and failing to carry through on his assurance, committed a deceptive act within the meaning of G. L. c. 93A, §§ 2(*a*) and 11. As the judge noted, an act or practice can be deceptive within the meaning of either of those sections if it "[can] reasonably be found to have caused a person to act differently from the way he otherwise would have acted." *Lowell Gas Co.* v. *Attorney Gen.*, 377 Mass. 37, 51 (1979). *Purity Supreme, Inc.* v. *Attorney Gen.*, 380 Mass. at 777. No intention to deceive need be shown. *Swanson* v. *Bankers Life Co.*, 389 Mass. 345, 349 (1983). Nor is proof of actual reliance on a misrepresentation required so long as the evidence warrants a finding of a causal relationship between the misrepresentation and the injury to the plaintiff. *Slaney* v. *Westwood Auto, Inc.*, 366 Mass. 688, 703 (1975). *International Fid. Ins. Co.* v. *Wilson*, 387 Mass. 841, 850 (1983). *Nei* v. *Burley*, 388 Mass. at 313. *Glickman* v. *Brown*, 21 Mass. App. Ct. 229, 236 (1985). We have no doubt as to the propriety of the judge's conclusion that such a relationship existed in this case.

We have dealt with all the questions raised below which have been argued here. No other question requires separate discussion.

The judgment is to be modified so as to include therein awards of counsel fees and expenses to the plaintiff in connection with this appeal in such reasonable amounts as may be determined by the Superior Court and, as so modified, is affirmed.[7]

*So ordered.*

---

[7] See *Patry* v. *Liberty Mobilehome Sales, Inc.*, 394 Mass. 270, 272 (1985); *Bertassi* v. *Allstate Ins. Co.*, 402 Mass. 366, 374 (1988).