MICHAEL UNDERWOOD & others[1] *vs.* ROBERT RISMAN & others.[2]

Middlesex. October 6, 1992. - January 8, 1993.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.

*Landlord and Tenant*, Consumer protection. *Lead Poisoning. Consumer Protection Act*, Landlord and tenant, Unfair act or practice.

A landlord was not subject to liability under G. L. c. 93A, § 2, for not disclosing the possibility of lead-based paint in a residential dwelling to childless prospective tenants, who later had a child who suffered injury allegedly from exposure to the paint, in circumstances where there was no evidence that the landlord knew of the existence of lead-based paint in the dwelling at the time he leased it. [99-101]

Where a defendant was not liable on a claim under G. L. c. 93A, § 2, this court had no occasion to consider whether the claim was governed by certain interpretive regulations of the Attorney General. [101-103]

CIVIL ACTION commenced in the Superior Court Department on October 31, 1984.

The case was heard by *J. Harold Flannery*, J.

The Supreme Judicial Court granted a request for direct appellate review.

*Daniel J. Gleason* (*Christopher R. O'Hara* with him) for Robert Risman & another.

*Edmund P. Daley* for Michael Underwood.

*Philip E. Murray, Jr.* (*Paul L. Cummings* with him) for John Hutchison.

*Robert S. Kutner*, for Massachusetts Association of Realtors, amicus curiae, submitted a brief.

---

[1] Sandra Riddick-Underwood and Willie Underwood. We refer to a single plaintiff.

[2] Risman Real Estate Corp. and John Hutchison. The plaintiff's claims against Hutchison were settled prior to trial and dismissed with prejudice. Risman filed a cross claim against Hutchison for indemnification.

*Cameron F. Kerry, Richard Mirabito, Robert C. Tommasino & Gerald T. Anglin,* for Massachusetts Property Insurance Underwriters Association, amicus curiae, submitted a brief.

LYNCH, J. The defendant, Robert Risman, appeals from a judgment in which a Superior Court judge ruled that failure to disclose to childless prospective tenants the likelihood of the presence of lead-based paint in a residential dwelling was a wilful and knowing act of deception proscribed by G. L. c. 93A, § 2 (1990 ed.).[3] The judge ruled that this conduct was causally related to the injuries sustained by the plaintiff which were caused by the ingestion of lead-based paint particles. The plaintiff was awarded damages in the amount of $2,212,925, which included trebled damages, attorney's fees, costs, and prejudgment interest.

Risman also appeals from the grant of summary judgment in favor of the defendant in cross claim, John Hutchison, on Risman's claim for indemnification based on a clause in their purchase and sale agreement for the residence in the underlying action. We granted Risman's application for direct appellate review. We conclude that Risman is not subject to liability under c. 93A for not disclosing the possibility of lead-based paint in a residential dwelling to childless prospective tenants. We reverse the judgment of the Superior Court for the plaintiff; it is, therefore, unnecessary for us to decide the question whether summary judgment was properly granted on the indemnity claim in favor of Hutchison.

The judge heard the case without a jury and made findings of fact and rulings of law. Mass. R. Civ. P. 52, 365 Mass. 816 (1974). Risman was an experienced owner and broker of

---

[3]General Laws c. 93A, § 2 (1990 ed.), declares unlawful "unfair or deceptive acts or practices in the conduct of any trade or commerce." Lessees of real property can sustain injury and receive protection within the purview of c. 93A. *Leardi* v. *Brown,* 394 Mass. 151, 159 (1985). *McGrath* v. *Mishara,* 386 Mass. 74, 86 (1982).

Partial summary judgment had previously been granted for Risman on claims of negligence, breach of implied warranty of habitability, and breach of the covenant of quiet enjoyment.

residential real estate. In May, 1981, Risman purchased the two-family dwelling at 15 Sherman Street in Medford. On July 15, 1981, Sandra Riddick-Underwood and Willie Underwood (Underwoods), a young, childless couple, signed a lease with Risman to rent the second floor apartment at 15 Sherman Street. The lease agreement limited the tenancy to the Underwoods and contained a clause specifically prohibiting children.[4] The possibility of lead-based paint being present in the apartment was not raised by either Risman or the Underwoods despite both Risman and the Underwoods admitting at trial to a general knowledge that older houses had a higher likelihood of lead-based paint and that lead-based paint ingestion is a health hazard for children.[5]

The Underwoods moved into 15 Sherman Street on August 1, 1981. Shortly thereafter, on August 25, 1981, Risman entered into a purchase and sale agreement with Hutchison for the sale of the property. The agreement contained a "lead paint clause" which provided that the "buyer will assume the full responsibility" for inspection and deleading of the property. It also stated that Risman made no warranty or representation regarding the level of lead-based paint in the property. Risman conveyed the property by quitclaim deed on September 10, 1981.

In November, 1981, Sandra Riddick-Underwood learned that she was pregnant and inquired of Hutchison whether the apartment contained lead-based paint. Although Hutchison told her that he was unsure, he left three months later for an extended trip to Africa without checking or testing for lead-based paint. The plaintiff was born on April 17, 1982. In August of 1982, Sandra Riddick-Underwood requested an inspection which revealed high levels of lead-based paint in the

---

[4] General Laws c. 151B, § 4 (11) (1990 ed.), provides, with exceptions not pertinent to Risman, that it is unlawful for an owner of real estate to refuse to rent or to lease to anyone with children; thus the judge found the clause to be void.

[5] Sandra Riddick-Underwood, a licensed practical nurse, testified that she knew what the hazards of lead-based paint ingestion were but thought lead-based paint remained only in the inner city "slum areas."

apartment. The board of health of Medford mailed a notice
to the owner, Hutchison, declaring an emergency and order-
ing remedial action within seven days. Hutchison began the
deleading process himself in late August or early September,
1982, continuing it over a period of approximately four
months.[6] The plaintiff and his mother would remain away
from the apartment during the actual deleading process, but
they would return to sleep in the apartment despite the pres-
ence of dust from the deleading process which permeated the
air and covered the furniture. In November, 1982, the plain-
tiff required medical intervention when blood tests revealed a
toxic level of lead in his bloodstream. The plaintiff now suf-
fers from hyperactivity and attention deficit disorder. Based
on the plaintiff's expert witness testimony, the damages
found by the judge before trebling were $100,000 for pain
and suffering, and $505,755 for diminished earning capacity.

1. *Applicability of c. 93A.* Risman contends in part that
the judge erred in ruling that nondisclosure of the presence
of lead-based paint constituted a violation of c. 93A, § 2, in
the circumstances of this case. Further, Risman argues that
the nondisclosure here was not material nor causally related
to the injury sustained by the plaintiff. We conclude that the
facts of this case do not support a material, knowing, and
wilful nondisclosure which violated § 2.

There was no appeal from the entry of summary judgment
for Risman on the plaintiff's claims arising under G. L.
c. 111, § 197 (1990 ed.), the lead-based paint statute. Since
Risman did not own the dwelling when a child six years of
age resided therein, nor did he own the dwelling when the
injury occurred, he was not required by G. L. c. 111, § 197,
to disclose to prospective tenants that the residence might
contain lead-based paint.

We must determine, therefore, whether any such duty ex-
ists under G. L. c. 93A. A duty exists under c. 93A to dis-
close material facts known to a party at the time of a trans-

---

[6]Willie Underwood assisted with the deleading process on at least one
occasion.

action. See *Nei* v. *Burley*, 388 Mass. 307, 316-317 (1983);
*Sheehy* v. *Lipton Indus.*, 24 Mass. App. Ct. 188, 195 (1987);
*Lawton* v. *Dracousis*, 14 Mass. App. Ct. 164, 170 (1982).
There is no liability for failing to disclose what a person does
not know. *Sheehy* v. *Lipton, Indus.*, *supra* at 196. The judge
based his ruling that Risman should have disclosed the pres-
ence of lead-based paint not on Risman's knowledge, but on
his experience in real estate, his testimony that he was aware
of the hazards associated with lead-based paint, and his
awareness that older houses have a higher likelihood of lead-
based paint. Thus, the judge imposed liability because of a
suspicion or a likelihood, rather than knowledge. This ruling
extends liability for nondisclosure far beyond the principles
previously articulated by the appellate courts of this Com-
monwealth. We have never imposed liability for nondisclo-
sure of a fact not known by the person against whom liability
is sought. "The notion of disclosure necessarily implies that
the fact in question is known to the person expected to dis-
close it." *Lawton* v. *Dracousis*, *supra* at 170, quoting Re-
statement (Second) of Contracts § 161 comment b (1979).
Culpability turns on Risman's state of mind at the time of
the letting of the apartment. *International Fidelity Ins. Co.*
v. *Wilson*, 387 Mass. 841, 853-856 (1983). Knowing requires
more than negligence. *Id.* at 854-855. See *Linthicum* v. *Ar-
chambault*, 379 Mass. 381, 388 (1979); *Heller* v. *Silver-
branch Constr. Corp.*, 376 Mass. 621, 627-628 (1978). It has
been suggested that actual knowledge may not be required if
such knowledge can be inferred from receipt of a complaint
which requires an investigation of the facts. Rice, New Pri-
vate Remedies for Consumers: The Amendment of Chapter
93A, 54 Mass. L.Q. 307, 319 (1969). Even this suggestion,
which goes farther than any of the decided cases, is inappli-
cable because there was no hint of such a complaint being
directed to Risman during the period of his ownership of the
locus. Liability will attach when there is a partial disclosure,
misrepresentation, or false statement. See *York* v. *Sullivan*,
369 Mass. 157, 162 (1975) (unfair or deceptive act to fail to
inform prospective tenants of pending application for rent in-

crease); *Fraser Eng'g Co.* v. *Desmond*, 26 Mass. App. Ct.
99, 103-104 (1988) (unfair or deceptive act where developer
failed to honor his assurance that plaintiff would be paid
from insurance proceeds); *Homsi* v. *C.H. Babb Co.*, 10 Mass.
App. Ct. 474, 478 (1980) (seller "made a promise, knowing
[it] could not be kept and that the plaintiffs would rely on
[the] promise," found to constitute unfair or deceptive act).
Nondisclosure is the failure to "disclose to another a fact
that [one] knows may justifiably induce the other to act or
refrain from acting in a business transaction . . . [if one] is
under a duty to the other to exercise reasonable care to dis-
close the matter in question." Restatement (Second) of Torts
§ 551 (1977). None of these principles results in the imposi-
tion of liability on Risman because the factual prerequisites
are missing.

As the judge ruled, c. 93A creates new substantive rights
and procedural devices to enforce those rights beyond the
traditional requirements of tort and contract law. *Slaney* v.
*Westwood Auto, Inc.*, 366 Mass. 688, 693 (1975). Broad as
this legislative intent may be, to find a breach of statutory
duty arising under c. 93A applicable to the facts of this case
would unduly extend the reach of that statute beyond any-
thing suggested by the statutory language or the prior appel-
late decisions. See *McGrath* v. *Mishara*, 386 Mass. 74, 85
(1982).

2. *The interpretive regulations.* Regulations have been
promulgated by the Attorney General under the authority of
G. L. c. 93A, § 2, interpreting the provisions of c. 93A. Title
940 Code Mass. Regs. § 3.16 (2) (1986)[7] provides, in perti-
nent part, that it is a violation of G. L. c. 93A, § 2, to fail to
disclose to a buyer any fact the disclosure of which may have

---

[7]Section 3.16 (2) of 940 Code Mass. Regs. (1986) states:
"Without limiting the scope of any other rule, regulation or statute, an
act or practice is a violation of M. G. L. c. 93A, s. 2 if: . . .

"(2) Any person or other legal entity subject to this act fails to dis-
close to a buyer or prospective buyer any fact, the disclosure of
which may have influenced the buyer or prospective buyer not to
enter into the transaction . . . ."

influenced the buyer not to enter into the transaction. At the time 940 Code Mass. Regs. § 3.16 (2) was initially adopted in 1971, G. L. c. 93A did not apply to the landlord-tenant relationship. See G. L. c. 93A, § 1, as amended by St. 1969, c. 814, § 1. After the Legislature amended c. 93A to expand its coverage to apply to such rental agreements, St. 1972, c. 123, the Attorney General promulgated the regulations codified in 940 Code Mass. Regs. § 3.17 (1974). Section 3.17 (1) (b) & (c) applies specifically to disclosure requirements in such situations.[8]

The parties argue about the applicability of these regulations and whether § 3.16 (2) applies in view of the more specific provisions of § 3.17 (1) (b) & (c). It is not necessary for us to resolve this controversy. Section 3.16 (2) adds little, if anything, to the provisions of the statute itself. The judge apparently reached the same conclusion because, in finding an unfair nondisclosure, he relied primarily on the statute rather than § 3.16 (2). In ruling on the defendant's motion for reconsideration he dismissed the defendant's contention that, because he had complied with 940 Code Mass. Regs. § 3.17 (1) (b) & (c), he could not be liable under G. L. c. 93A, § 2. In so doing the judge stated that "[t]he nondisclosures in this case were unfair and deceptive under c. 93A,

---

[8]Section 3.17 (1) (b) & (c) of 940 Code Mass. Regs. (1986) states:

"(1) *Conditions and Maintenance of a Dwelling Unit.* It shall be an unfair or deceptive act or practice for an owner to: . . .

"(b) Fail, during the terms of the tenancy, after notice is provided in accordance with M.G.L. c. 111, s. 127L, to

"1. remedy a violation of law in a dwelling unit which may endanger or materially impair the health, safety, or well-being of the occupant, or

"2. maintain the dwelling unit in a condition fit for human habitation; provided, however, that said violation of law was not caused by the occupant or others lawfully upon said dwelling unit;

"(c) Fail to disclose to a prospective tenant the existence of any, condition amounting to a violation of law within the dwelling unit of which the owner had knowledge or upon reasonable inspection could have acquired such knowledge at the commencement of the tenancy."

§ 2. The implementing Regulations cannot sensibly be con-
strued to permit that which the underlying statute forbids."
We agree with the latter statement. However, since we have
previously concluded that the statute imposes no liability for
nondisclosure in the circumstances before us, we do not reach
the question whether the more general regulation has any vi-
ability in view of the later adopted, more specific, provisions
of § 3.17 (1) (b) & (c).

*Judgment reversed.*