King, J.
INTRODUCTION
This is a consumer protection action brought by the Attorney General on behalf of the Commonwealth of Massachusetts pursuant to G.L.c. 93A, §4. The Commonwealth alleges that the defendants sent solicitation packages to businesses and that those solicitation packages violated G.L.c. 93A, §2(a). Specifically, the Commonwealth alleges that the solicitation packages had a “tendency or capacity” to mislead the recipients into believing that they were renewing or approving a listing in a “yellow pages” directory published and distributed by a local telephone company, when in fact they were not. The Commonwealth seeks injunctive relief, restitution for consumers, civil penalties and the costs of investigation and litigation, including reasonable attorney’s fees. The Commonwealth now seeks partial summary judgment on the claim that the defendants’ solicitation packages violated G.L.c. 93A, §2(a). After considering the arguments and materials submitted by counsel, the Commonwealth’s motion will be ALLOWED for the following reasons.[2]
BACKGROUND
The undisputed facts are as follows. Charles Smith is the sole shareholder, president, treasurer and director of Amcan Enterprises, Inc. (Amcan). He also directs and controls CS Enterprises, Inc. (CS) in his capacity as officer and director of that corporation. Amcan and CS both have their principal place of business at the same address in Miami, Florida. Both corporations do business as North American Directories, The New England Yellow Pages, Yellow Pages National Edition, and N.E. U.S. Directories. Each of these entities uses a Massachusetts or New England mailing address.[3] Mail to those addresses is forwarded by the postal service to the defendants’ place of business in Florida. The defendants have never operated any functioning office or business at any of their Massachusetts or New England mailing addresses. The defendants have no affiliation with AT&T, Nynex, or any local telephone company.
In early 1990, the defendants began mailing solicitation packages to businesses in Massachusetts soliciting advertisements in the defendants’ “yellow pages” directories. By the defendants own tally, between 1990 and 1994, 2,345,000 of their solicitation packages had been sent to Massachusetts businesses. From 1991 through 1993, the defendants charged the Massachusetts businesses that responded to their solicitations from $147.00 to $196.00 annually for a listing in their directoiy. The record does not disclose the number of Massachusetts businesses that paid for advertisements in the defendants’ directories.
Although there have been variations among the solicitations distributed by the defendants since 1990, the materials have remained the same in most material respects. A copy of one of the defendants’ solicitation packages is attached hereto as Appendix A.* Defendants’ solicitation packages, including return envelopes, make repeated and prominent use of the words “yellow pages” and of the “walking fingers” logo.[4] The solicitations are printed on yellow paper. Large printed block letters state “THIS IS NOT A BILL.” The company address listed on the solicitation is a New England address. The solicitation packages state that a free “white-page” listing is included with the purchase of a “yellow-page” listing, and the .forms identify a “Directoiy Representative” and an “account” or “reference number. ” Below large bold letters reading “NOTICE,” recipients are instructed to return the bottom portion of the form by a specified date “to be listed in the [upcoming] directoiy edition.”
The solicitation form is perforated so that the bottom portion can be returned to the New England address printed on it. On this tear-off appears the instruction “CHECK ONE” next to the choices:
Listing is correct as shown above. Please print as is in the Forthcoming Edition.
*54 Changes indicated below are necessary before printing in Forthcoming Edition.
At the very bottom of the tear-off is printed a statement that the directory “is not affiliated with AT&T or any local telephone company.”
The directories are not distributed to all individuals or businesses who are local telephone subscribers. Instead, the defendants’ directories are distributed to those businesses that responded to their solicitation and selected businesses, professional organizations, chambers of commerce, hotels, motels, public libraries, and government purchasing agencies.
Although the Commonwealth contends that the court should rule as a matter of law that the solicitation packages violate G.L.c. 93A without resort to extrinsic evidence, it submitted nine affidavits from individuals in charge of businesses who state that they returned the defendants’ solicitation forms because they believed they were authorizing or renewing a listing in the local telephone company’s “yellow pages” directory. The Commonwealth also filed an affidavit from an employee of the Attorney General’s office stating that the Attorney General’s office received at least 75 complaints about the defendants’ solicitation packages. The defendants have submitted two opposing affidavits, including the affidavit of Dr. Edward T. Popper, a Professor of Marketing and Business Administration at Bellarmine College, Louisville, Kentucky, who opines that a reasonable recipient of the defendants’ solicitation package would not be mislead as to what it is.
DISCUSSION
Summary judgment shall be granted where (1) there are no material facts in dispute and (2) the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community National Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving parly bears the burden of affirmatively demonstrating these elements. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). A party moving for summary judgment, who does not have the burden of proof at trial, may demonstrate the absence of a triable issue either by submitting affirmative evidence that negates an essential element of the opponent’s case or “by demonstrating that proof of that element is unlikely to be forthcoming at trial." Flesner v. Technical Communications Corp., 410 Mass. 805 (1991), accord, Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). “If the moving parly establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact in order to defeat [the] motion.” Pederson, supra, 404 Mass. at 17. “[T]he opposing party cannot rest on his or her pleadings and mere assertions of disputed facts to defeat the motion for summary judgment.” LaLonde v. Eissner, 405 Mass. 207, 209 (1989).
General Laws chapter 93A, §2 (a) declares unlawful “unfair or deceptive acts or practices in the conduct of any trade or commerce . . .” The statute, however, contains no definition of “unfair or deceptive acts or practices.” Instead, Section 2(b) of the statute directs the courts, in interpreting the statute, to be guided by the interpretation given by the Federal Trade Commission and the Federal Courts to Section 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C. 45(a)(1). Also, Section 2(c) of chapter 93A authorizes the Attorney General to make rules and regulations “identify[ing] particular business practices as falling within [the scope of §2(a)[.” Purity Supreme, Inc. v. Attorney General, 380 Mass. 762, 771 (1980). Those rules and regulations, however, “shall not be inconsistent with the rules, regulations and decisions of the Federal Trade Commission and the Federal Courts interpreting the provisions of the [Federal Trade Commission Act].” G.L.c. 93A, §2(c). The Attorney General has promulgated the following regulations on which the Commonwealth’s case is based:
940 C.M.R. §3.05(1) states in relevant part:
“No claim or representation shall be made by any means concerning a product which directly, or by implication, or by failure to adequately disclose additional relevant information, has the capacity or tendency or effect of deceiving buyers or prospective buyers in any material respect.”
940 C.M.R. §3.16(2) states that an act or practice is a violation of G.L.c. 93A, §2 if:
“Any person or other legal entity subject to this act fails to disclose to a buyer or prospective buyer any fact, the disclosure of which may have influenced the buyer or prospective buyer not to enter into the transaction.”
For purposes of this case, each of these regulations use different words to express the same prohibition; namely, a solicitation package is deceptive if it contains material misrepresentations or omissions which are likely to mislead the recipients.
The defendants oppose the motion for summary judgment on two principal grounds. First, that the regulations relied on by the Commonwealth are unlawful. Second, that even if they are not unlawful, there are material issues of fact in dispute which preclude summaiy judgment.[5]
Defendants contend that the Attorney General’s regulations at issue in this case violate c. 93A, §2(c) because they are inconsistent with federal interpretations of the Federal Trade Commission Act.[6] Specifically, the defendants maintain that the Federal Trade Commission’s decision in Cliffdale Associates, Inc., et al., 103 F.T.C. 110, 165 (1984), adopted a new standard for determining which acts or practices are deceptive and that the new standard is inconsistent with the standard set forth in the Attorney General’s regulations. That is, the defendants contend the Federal *55 Trade Commission in Cliffdale abandoned the previously approved “tendency and capacity to deceive” standard and adopted an entirely different and more stringent legal standard. The defendants argue that the Attorney General should have adopted amended regulations after the Cliffdale decision to make the regulations consistent with the new standard adopted by the Federal Trade Commission. Since the Attorney General failed to do this, the defendants argue that the regulations relied upon in this case are unenforceable as inconsistent with federal law. The court disagrees.
In Cliffdale the administrative law judge applied the “tendency and capacity to deceive” rule in reaching the decision that the Cliffdale defendants’ practices were deceptive. Although the Federal Trade Commission upheld the administrative law judge’s decision, it decided that the “tendency and capacity to deceive” standard for deception used by the administrative law judge was “circular and therefore inadequate to provide guidance on how a deception claim should be analyzed.” Id. at 164. For this reason, the Federal Trade Commission decided to “articulate a clear and understandable standard for deception.” Id. Under this newly articulated standard, an act or practice is deceptive only if:
(1) there is a representation, omission, or practice that;
(2) is likely to mislead consumers acting reasonably under the circumstances, and
(3) the representation, omission or practice is material. Id. at 165.
This newly articulated standard, however, did not represent a radical change in policy as suggested by the defendants. Rather, the elements of the new standard articulate the factors usually used in most earlier Commission cases identifying whether or not an act or practice was deceptive, even though the language used in those cases was often couched in such terms as “a tendency and capacity to deceive.” Id., citing Sears Roebuck and Co., 95 F.T.C. 406 (1980), aff'd, 676 F.2 385 (9th Cir. 1982).
The defendants argue that under the Attorney General’s regulations, a baker advertising pastries as “Danish pastries” might be subject to liability under the Attorney General’s regulations because some consumer might be misled into believing that the pastries had been made in Denmark. This contention that the “tendency or capacity to deceive” standard gives a cause of action to the most gullible consumer is-simply not supported by the case law. Indeed, as the Federal Trade Commission pointed out in the Cliffdale decision, “the requirement that an act or practice be considered from the perspective of a ‘consumer acting reasonably in the circumstances’ is not new. Virtually all representations, even those that are true, can be misunderstood by some consumers. The Commission has long recognized that the law should not be applied in such a way as to find that honest representations are deceptive simply because they are misunderstood by a few.” Id., citing Heinz W. Kirchner, 63 F.T.C. 1282 (1963). In sum, while the Federal Trade Commission in Cliffdale articulated a new standard for determining whether an act or practice is deceptive, that new test is rooted in established precedent and does not affect the validity of the Attorney General’s regulations.
There is no inconsistency between the Attorney General’s regulations and interpretations of the Federal Trade Commission or Federal Courts.[7] The principle that the “tendency or capacity to deceive” standard must be construed in the context of a reasonable consumer is in accord with Massachusetts case law interpreting G.L.c. 93A. Leardi v. Brown, 394 Mass. 151, 156 (1985) (in determining whether an act or practice is deceptive, “regard must be had, not to fine spun distinctions and arguments that may be made in excuse, but to the effect which it might reasonably be expected to have upon the general public.” Citing P. Lorrilard Co. v. F.T.C., 186 F.2d 52, 58 (4th Cir. 1950).
The defendants’ next argument is that even if the regulations are not found to be invalid, the summary judgment motion must be denied because there are material facts in dispute concerning whether the defendants’ solicitation packages were deceptive. Based upon the court’s review of the solicitation packages, the solicitation packages are deceptive as a matter of law without resort to extrinsic evidence. Nothing in the materials filed by the defendants in opposition to the summary judgment motion raise any material issue of fact.
The Commonwealth has the burden in this case to establish that the defendants’ solicitation packages: (1) contained misrepresentations or omissions; (2) which were likely to mislead a business consumer acting reasonably under the circumstances; and (3) that the omissions were material. Cliffdale, 103 F.T.C. at 165.
The Commonwealth does not have to show actual reliance by consumers to prove a violation of G.L.c. 93A. See, e.g., Slaney v. Westwood Auto, Inc., 366 Mass. 688, 690-91, (1975); Fraser Engineering Co. v. Desmond, 26 Mass.App.Ct. 99, 104 (1988); F.T.C. v. Patriot Alcohol Testers, Inc., 798 F.Supp. 851, 860 (D.Mass. 1992), citing F.T.C. v. Security Rare Coin & Bullion Corp., 931 F.2d 1312, 1316 (8th Cir. 1991). A practice is deceptive if it could “reasonably be found to have caused a person to act differently from the way he otherwise would have acted.” Purity Supreme, Inc. v. Attorney General, 380 Mass. at 777.
Also, the defendants’ alleged lack of intent to deceive is not a defense to the Commonwealth’s claim. F.T.C. v. The World Travel Vacation Brokers, Inc., 861 F.2d 1020, 1029 (7th Cir. 1988), citing Beneficial Corp. v. F.T.C., 542 F.2d 611, 617 (3rd Cir. 1976). Nor is the defendants’ alleged good faith a defense. Id., citing *56 Chrysler Corp. v. F.T.C., 561 F.2d 357, 363 n.5 (D.C. Cir. 1977). Whether conduct falls within the scope of G.L.c. 93A depends on the facts and circumstances of each case. Quaker State Oil Refining Corp. v. Garrity Oil Co., Inc., 884 F.2d 1510, 1514 (1st Cir. 1989); USM Corp. v. Arthur D. Little Systems, Inc., 28 Mass.App.Ct. 108, 124 (1989), review denied, 406 Mass. 1104 (1990).
The defendants’ use of the words “yellow pages" and the “walking fingers” logo was not, in and of themselves, deceptive. However, the conspicuous use of the “walking fingers” logo and the words “yellow pages,” together with the use of a local return address, the promise of a “free white-page listing,” the reference to an account or reference number and a directory representative combine to give a strong impression that the solicitation package was sent to an existing customer by the publisher of the local telephone company “yellow pages” directory. The defendants’ solicitation packages, taken as a whole, were likely to mislead business consumers, acting reasonably under the circumstances, to believe that they were sent by the publisher of the local “yellow pages” directory and that by responding to the solicitation package, the recipients were renewing an existing listing.
The solicitation packag misrepresents or fails to disclose the following material information:
defendants do not publish the local “yellow pages” customarily distributed to all telephone subscribers in the recipient’s area;
the defendants do not publish the “white pages” directory customarily distributed to all telephone subscribers in the recipient’s area;
defendants directory is a small, national, regional, or statewide business-to-business directory which is not distributed to all telephone subscribers in the recipient’s region;
recipients of the solicitation package had not previously contracted with the defendants for the placement of advertising or listing; and
recipients of the solicitation packages did not have listings in the defendants’ last directory.
These omissions or failures to disclose were material to recipients of the defendants’ solicitation packages.[8]
The notation on the very last line of the solicitation package that “North American directories is not affiliated with AT&T or any local telephone company” is not a sufficient disclaimer. It is too inconspicuous to eliminate the overall misleading impression created by the deceptive solicitation packages. Removatron Intern Corp. v. F.T.C., 884 F.2d 1489, 1497 (1st Cir. 1989) (“Disclaimers . . . are not adequate to avoid liabiliiy unless they are sufficiently prominent and unambiguous to change the apparent meaning of the claims and to leave an accurate impression”); Kurzon v. United States Postal Service, 539 F.2d 788, 795 (1st Cir. 1976).
ORDER
1. Plaintiffs motion for partial summary judgment is hereby ALLOWED.
2. An assessment of damages hearing, including an award of attorney’s fees, will be held at 2 P.M. on April 25, 1996 in Courtroom 304, Suffolk County. Within 21 days of receipt of this decision, the plaintiff shall file an affidavit in support of the requested award of attorney’s fees and a proposed form of judgment containing the relief sought. If an evidentiary hearing will be needed to assess the amount or restitution, the parties should notify the Court within 14 days as to the expected amount of time will be needed to assess these damages.

Note: This Appendix has not been reproduced.

On May 24, 1994 the United States District Court for the District of Columbia entered a preliminary injunction against the defendants from using the United States mails in making deceptive or misleading statements in marketing their “yellow pages” directories. On January 27, 1995, the Attorney General of Minnesota was granted summary judgment against the defendants for similar conduct in violation of the Minnesota consumer protection law.

Three of these entities maintain the same mailing address in Boston.

There is no dispute that the words “yellow pages” and the “walking fingers” logo are in the public domain. In 1990, the defendant Amcan filed three applications for Registration of a Trademark pursuant to G.L.c. 110, §4 for the trademark ‘The Massachusetts Yellow Pages,” The New England Yellow Pages" and ‘The Yellow Pages of Massachusetts.” The Secretary of State approved each of these applications and issued Certificates of Registration of Trademarks on October 15, 1990. In addition, the defendant C.S. on September 4, 1990, was issued a similar certificate for the trademark ‘The Yellow Pages of New England.”

The defendants also argue that the Commonwealth has not shown that their “level of rascaliiy” was sufficient to violate G.L.c. 93A. This “level of rascality” analysis is not an appropriate approach to deciding whether a particular act or practice offends G.L.c. 93A. Massachusetts Employees Exchange v. Propac-Mass, Inc., 420 Mass. 39, 42 (1995).

General Laws chapter 93A, §2(b) mandates that the court “will be guided by the interpretations given by the Federal Trade Commission and the Federal Courts to Section 5(a)(1) of the Federal Trade Commission Act” and §2(c) requires that the Attorney General’s regulations be “consistent” with those interpretations.

General Laws chapter 93A, §2(b) does not mandate that Massachusetts adopt regulations identical to the interpretations give by the Federal Trade Commission and the Federal Courts to the Federal Trade Commission Act. Rather, the statute merely requires that the Attorney General’s rules and regulations “shall not be inconsistent with the Federal Trade Commission and the Federal Court’s interpretation of the Federal Trade Commission Act.” The statute does not require Massachusetts courts to adopt those federal interpretations in their entirety. Rather, G.L.c. 93A, §2(b) only requires that Massachusetts courts be “guided” by those interpretations. In sum, the Attorney General has the authority to adopt regulations that are more restrictive than the rules adopted by the Federal Trade Commission so long as they are not inconsistent with the Federal Trade Commission’s rules and *57 regulations. Purity Supreme Inc. v. Attorney General, 380 Mass. at 781 (1980).

An examination of the defendants’ directory submitted to the court demonstrates that the directory, given its content, nature and manner of distribution, brought no benefit to most businesses that paid for advertisements in the directory. For example, there is no conceivable business reason why Olga’s Barber Shop, in Sandwich, MA, one of 26 barber shops listed, would pay $196 to advertize in a regional business-to-business “yellow pages” directory covering the New England States. See 1992-93 New England Yellow Pages, p. 27 of the yellow pages section, published by North American Directories. This directory discloses numerous similar examples of businesses which would not benefit from an ad in a New England business-to-business directoiy.