Botsford, J.
This is an action concerning the purchase of a home in Burlington, Massachusetts. The plaintiffs are the purchasers; the defendants are the real estate broker (the brokerage firm and the individual broker) and the sellers. The third-party defendants are other brokers. The plaintiffs have dismissed their claims against Tabaldi & Nudler, Inc. and June Tabaldi, and the defendants Donna Surette and Kevin Surette (the Surettes) have dismissed their third-party complaint against Hunneman & Co. /Coldwell Banker, Inc. Thus, it appears, all that remains in the case is the plaintiffs’ claim of fraud against the sellers, the Surettes. The Surettes now move for summary judgment on that claim; the plaintiffs oppose the motion. For the reasons discussed below, the motion for summary judgment will be allowed.
Background
The summary judgment record reveals the following.[4] In the summer of 1993 the Surettes were seeking to sell their home at 170 Winn Street in Burlington, Massachusetts (the property). In connection with their efforts to do so, the Surettes engaged the services of a brokerage agency, Tabaldi & Nudler, Inc., and Donna Surette filled out a Massachusetts Association of Realtors form entitled “Seller’s Description of Property." One of the line items on the form asks: “Foundation/slab problems/settling? Explain.” Next to this printed entry, Donna Surette wrote, “Settling cracks repaired.” Another line item asks the seller if there are other building or structural problems, and if so, to describe them. In response to this question, Donna Surette checked the box stating, “unknown.”
The plaintiffs first became aware of the property when they saw it advertised in a monthly real estate publication, “Homeview.” They went to see the property in early October 1993. The Brennans walked through the house and around the outside; they were permitted to go and look at any part of the house and surrounding yard they wished to see. Later the same day, the plaintiffs returned for a second visit, bringing Deborah Brennan’s parents with them. During that visit, Timothy Brennan and Deborah Brennan’s father, Robert Thomas, walked around the house and then spoke with Kevin Surette. Surette mentioned to the two men that there had been settling problems with the house next door (or houses in the vicinity), and Timothy Brennan asked Surette a question about the foundation of the Surettes’ house. Brennan or Thomas pointed to a portion of the foundation which had been repaired, and they asked Surette about it. Surette explained that there had been settling cracks in the foundation due to water seepage, that he had repaired the problem (or had had the problem repaired), and that a portion of the old cement in the garage foundation had been replaced with new cement. Neither Timothy Brennan nor Robert Thomas asked any further questions about the foundation, and Surette did not say anything else about it.[5] At the time, Surette was not aware that there were or had been any other settling cracks in the foundation of the *39 house.[6] However, Donna Surette knew that there were perhaps two other hairline cracks in the foundation of the house, one in the front of the house and one on the left side. (See Donna Surette’s deposition, pp. 41-42.) These cracks had also been repaired by the time of the sale of the property to the Brennans, (id., pp. 42-43.)[7]
After the second visit to the property, the Brennans made an offer to purchase it. The offer was ultimately accepted, and an agreement reached that the Brennans would buy the property for $ 154,000. Thereafter, the parties signed a standard purchase and sale agreement. The “Seller’s Description of Property” form, described above, was attached to the purchase and sale agreement. The Brennans read this form and signed it as well. The purchase and sale agreement gave the Brennans the right, to have the property inspected, and the associated right to walk away from the purchase within ten days if not satisfied with the results of the inspection. The agreement goes on to provide, however, that
[i]n the event the BUYER does not elect to have such inspection or to so terminate within ten (10) days the SELLER and the Broker(s) are hereby released from liability relating to defects in the premises which the BUYER or BUYER’S consultants) could reasonably have been expected to discover.
(Agreement, 128.) The Brennans chose not to have the property professionally inspected.[8]
On December 8, 1993, the Brennans purchased the property from the Surettes. In the spring of 1994, the Brennans began to notice cracks in the bedroom walls and in the foundation of the house. In addition, at the point where the repair to the foundation had been made part of the foundation separated from the rest, creating a gap of a quarter inch thick and two and one-half feet long.[9] The Brennans commenced this action in the fall of 1995.
Discussion
The plaintiffs charge the Surettes with fraud, or deceit. “In a deceit action, the plaintiff must prove ‘that the defendant made a false representation of a material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act thereon, and that the plaintiff relied upon the representation as true and acted upon it to his damage.’ ” Danca v. Taunton Sav. Bank, 385 Mass. 1, 8 (1982) (quoting Barrett Assocs. v. Aronson, 346 Mass. 150, 152 (1963)). Accord, Zimmerman v. Kent, 31 Mass.App.Ct. 72, 77 (1991).
The plaintiffs focus on two alleged fraudulent representations by the Surettes: (1) the failure of Kevin Surette to inform Timothy Brennan about the hairline cracks in the foundation other than the crack due to water seepage which he did point out to Brennan and Robert Thomas; and (2) Donna Surette’s purported false statement concerning repaired settlement cracks on the seller’s property description form. The summary judgment record indicates , however, that the plaintiffs “have no reasonable expectation” [Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991)) of proving one or more elements of their claim. In particular, they cannot show that they relied on one of the alleged misrepresentations by the Surettes; and it further appears that they cannot prove that the other representation was false.
As the sellers of the property, the Surettes did not owe any fiduciary duty to the plaintiffs. Moreover, as sellers, the Surettes did not have any duty to disclose every latent defect in the property which reduced its value and of which they had knowledge. See Nei v. Burley, 388 Mass. 307, 310-11 (1983). See also Swinton v. Whitinsville Sav. Bank, 311 Mass. 677, 678-79 (1942). However, where a seller provides some information about a particular topic — whether voluntarily or in response to a question from the buyer — the seller is bound to disclose all material facts on the topic which are within his knowledge. Kannavos v. Annino, 356 Mass. 42, 48 (1969).
Considering the plaintiffs’ first allegation of fraud, I assume, for purposes of this motion, that the knowledge of Donna Surette concerning the two hairline settling cracks in the foundation should be imputed to her husband.[10] When this is done, however, even if a factfinder might conclude that Kevin Surette was obliged to reveal to Timothy Brennan in response to his question about the foundation that there were two other hairline settling cracks, the record indicates that the plaintiffs did not rely, and could not reasonably have relied on Surette’s omission in deciding to purchase the property. The plaintiffs were provided a copy of the “Seller’s Description of Property" form at the time they signed the purchase and sale agreement. The form notes specifically the existence of “settling cracks” (not one crack).[11] The plaintiffs testified they read this form, and they signed it. At no time did they ask any questions about the notation concerning settling cracks. Nor did they take advantage of their option to have the property inspected. According to Timothy Brennan, they did not do so because they knew that the bank was conducting an inspection.[12] In these circumstances, a claim of actionable reliance on anything incompletely stated or omitted by Kevin Surette cannot stand.[13] See Nei v. Burley, supra, 388 Mass. at 311.[14]
With respect to the second representation at issue, the record fails to indicate that the statement about repaired settling cracks was in any way false or inaccurate. Donna Surette testified at her deposition that the two hairline settling cracks had been repaired, and there is no contrary evidence; as discussed above (see p. 3 and n.8), the plaintiffs seem to misread her deposition testimony on this point.
*40 ORDER
For the foregoing reasons, the motion for summary judgment of the defendants Kevin and Donna Surette is allowed.

Count V of the complaint, titled “Fraud, ” is the only count against the Surettes. It alleges that a written description of the property in question was “deliberately misleading” in connection with the information supplied about settling cracks, and also claims that the Surettes deliberately omitted information on the form to the effect that the house was located on property that formerly was a dump. At this point, the plaintiffs appear only to be proceeding with the allegation that the Surettes fraudulently misrepresented the existence and status of settling cracks. I treat any claim concerning the alleged fraud in failing to inform the plaintiffs about the former use of the land as waived.

Nor did the plaintiffs inquire further of the Surettes or anyone else about the house(s) close by with settling problems.

Kevin Surette so testified in his deposition, and the Brennans do not dispute the statement.

The plaintiffs read Donna Surette’s deposition as stating there were hairline cracks in the front and the side, and that they had been simply “skim-coated” with paint, not repaired. (Plaintiffs’ memorandum in opposition to motion for summary judgment, p. 3.) This is not accurate. Donna Surette states in her deposition that the hairline cracks in the foundation were repaired, albeit later than the crack in the garage foundation which is discussed in the text above. (Donna Surette deposition, p. 42.) Two pages later in the deposition the following exchange takes place:
Q. Do you know if Mr. Surette did any decorating to the house for the purpose of making it more saleable? I could be more specific. Did Mr. Surette paint the house to make it more attractive for sale?
A. We had the outside skim coated. Is that what you mean?
Q. Okay. Do you know if anyone painted the foundation to make it more attractive for sale?
A. Paint it, no, that’s skim coated.
(Donna Surette deposition, p. 44.) A reasonable interpretation of the deposition testimony is that the repair of the hairline cracks was a separate event from the skim coating of the foundation.

The Brennans obtained a mortgage loan from the Cambridge Savings Bank in connection with the purchase, and it appears the bank had the property inspected. The results of that inspection are not included in the summary judgment record.

It appears that the separation and gap occurred at the part of the foundation where Kevin Surette had pointed out to Timothy Brennan the repair he had made.

Kevin Surette on his own could not be held liable for failing to disclose facts of which he had no knowledge. See Underwood v. Risman, 414 Mass. 96, 100- 01 (1993). There is nothing in the record to dispute Kevin Surette’s statement that he was not aware of the two hairline cracks or indeed any problems with the foundation other than the one area which he had discussed with Timothy Brennan and Robert Thomas.

The plaintiffs’ claim that this statement was false is discussed immediately below.

As noted above, the results of the bank’s inspection are not in the record. Whatever its results, the record indicates that to the extent the plaintiffs were relying on any information supplied by a third party about the condition of the house, the reliance would have been placed on the bank rather than the Surettes.

There is another significant problem with the plaintiffs’ claim. Even if Donna Surette’s knowledge is imputed to her husband, her knowledge, undisputed in the record, was that the additional settling cracks had been repaired. (See the following paragraph in the text.) The record appears to be silent on the seemingly critical issue of whether the plaintiffs would have foregone purchasing the property if they had known of the hairline settling cracks mentioned by Donna Surette of her deposition. This problematic omission is more problematic when one realizes that what the plaintiffs would actually need to indicate is that they would have declined to buy the property if they had known of the repaired settling cracks mentioned by Donna Surette.

In light of this conclusion, I do not reach the issue whether the plaintiffs’ claim about the foundation is in any event barred by the clause in the purchase and sale agreement purporting to release the Surettes from any liability based on a condition of the properly that might have been discovered in an inspection.