2003 WY 75

**Raymond M. HULSE and Kristina Hulse, f/k/a Kristina Bova, Appellants (Plaintiffs),**

v.

**BHJ, INC., Appellee (Defendant).**

No. 02–148.

Supreme Court of Wyoming.

June 17, 2003.

Brad A. Schreiber of Day, Morris & Schreiber, LLP, Belle Fourche, SD; and Michael W. Strain of Morman Law Firm, Sturgis, SD, Representing Appellants

James R. Bell of Murane & Bostwick, LLC, Casper, WY, Representing Appellee.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

LEHMAN, Justice.

[¶ 1]   This is an appeal from the entry of summary judgment against appellants Raymond M. Hulse and Kristina Hulse (collectively the Hulses) in favor of appellee BHJ, Inc. (BHJ), ruling that the Hulses' claim of

negligence against BHJ is barred by the statute of limitations. We affirm.

## ISSUE

[¶ 2]   The Hulses' raise a solitary issue on appeal:

> Whether or not the trial court erred as a matter of law granting BHJ's motion for summary judgment.

## FACTS AND HISTORICAL BACKGROUND

[¶ 3]   On August 10, 1998, the Hulses filed their complaint surrounding their purchase of a piece of real property. The Hulses alleged breach of contract, negligence, fraud, and bad faith against First American Title Company of Crook County (First American) and negligence and fraud against BHJ, the real estate broker of the selling party. The basis of the complaint stemmed from allegations that there was a failure by First American and BHJ to disclose that the access easement to the property was restricted prohibiting commercial use of the easement.

[¶ 4]   In their complaint, the Hulses allege they purchased the property with the intent of conducting commercial business, including an outfitting and hunting business and a bed and breakfast, and that both First American and BHJ were aware of the Hulses' reasons for purchasing the property. However, subsequent to the purchase, the Hulses learned that sole access to the property was by way of a restricted easement which prohibited commercial use of the easement causing the Hulses to sustain damages.

[¶ 5]   Initially, the district court granted summary judgment in favor of both First American and BHJ. Following appeal, this court issued its opinion in *Hulse v. First American Title Co. of Crook County,* 2001 WY 95, 33 P.3d 122 (Wyo.2001) (hereinafter, *Hulse I* ), upholding the summary judgment ruling as to First American and BHJ, with the exception of summary judgment entered in favor of BHJ on the negligence claim. Specifically, this court remanded the negligence claim asserted against BHJ to the district court for a determination of whether BHJ's agent, Edward "Amory" Hubbard, ex-ercised the care, skill, and diligence others who are engaged in the profession would ordinarily exercise under similar circumstances in fulfilling the duties imposed upon him by statute. *Hulse I,* at ¶ 62. In *Hulse I,* this court also recognized that the claim asserted by the Hulses against BHJ, while labeled "negligent misrepresentation," essentially asserted a breach of the duty of care owed by real estate professionals to non-client buyers or a "professional negligence" claim as defined under Wyo. Stat. Ann. § 33–28–124 (LexisNexis 2001) and controlled by Wyo. Stat. Ann. § 1–3–107 (LexisNexis 2001). *Hulse I,* at ¶¶ 51–62.

[¶ 6]   On remand, BHJ filed a second motion for summary judgment asserting that the Hulses had failed to timely file their professional negligence claim against BHJ within the applicable two-year statute of limitations called for under Wyo. Stat. Ann. § 1–3–107. Upon review, the district court entered summary judgment in favor of BHJ. This appeal followed.

## STANDARD OF REVIEW

[¶ 7]   Our standard of review is well established. We recently reiterated this standard of review in the case of *Trabing v. Kinko's, Inc.,* 2002 WY 171, ¶ 8, 57 P.3d 1248, ¶ 8 (Wyo.2002):

> Summary judgment is appropriate when no genuine issue as to any material fact exists and the prevailing party is entitled to have a judgment as a matter of law. *Eklund v. PRI Environmental, Inc.,* 2001 WY 55, ¶ 10, 25 P.3d 511, ¶ 10 (Wyo. 2001); *see also* W.R.C.P. 56(c). A genuine issue of material fact exists when a disputed fact, if it were proven, would have the effect of establishing or refuting an essential element of the cause of action or defense that has been asserted by the parties. *Williams Gas Processing–Wamsutter Co. v. Union Pacific Resources Co.,* 2001 WY 57, ¶ 11, 25 P.3d 1064, ¶ 11 (Wyo.2001). We examine the record from the vantage point most favorable to the party who opposed the motion, and we give that party the benefit of all favorable inferences that may fairly be drawn from the record. *Id.* We evaluate the propriety

of a summary judgment by employing the same standards and by using the same materials as were employed and used by the lower court. *Scherer Constr., LLC v. Hedquist Constr., Inc.*, 2001 WY 23, ¶ 15, 18 P.3d 645, ¶ 15 (Wyo.2001). We do not accord any deference to the district court's decisions on issues of law. *Id.*

### DISCUSSION

■ [¶ 8] The Hulses contend that Wyo. Stat. Ann. §§ 33–28–124 and 1–3–107 refer to the rendering of services and that the rendering of services contemplates a contractual or fiduciary relationship with a client, not a non-client.[1] Therefore, the Hulses reason that because they had no contractual or fiduciary relationship with BHJ, BHJ's agent, Mr. Hubbard, could not have provided professional services to the Hulses. The Hulses argue that due to the fact that they had no contractual or fiduciary relationship with BHJ, they may only sue BHJ for non-disclosure of the restricted easement under a "negligent misrepresentation" theory defined under Wyo. Stat. Ann. § 33–28–303(c) (Lex-isNexis 2001), which they assert is controlled by Wyo. Stat. Ann. § 1–3–105(a)(iv)(C) (LexisNexis 2001), affording a four-year statute of limitations.[2] Thus, the Hulses conclude that their negligence claim against BHJ was timely made.

[¶ 9] We begin our analysis by reiterating the language stated in *Hulse I*. While we recognize that this quotation is somewhat lengthy, we find it instructive. Therein, we stated:

The Hulses appeal the district court's grant of summary judgment for the defendant BHJ, Inc., a licensed real estate brokerage, for the acts of its agent Amory Hubbard on claims they label negligent misrepresentation and fraud. We take this opportunity to clarify the duties owed by licensed real estate brokers, agents, and salespersons and the causes of action that may arise as a result of an alleged breach of those duties.

The Hulses assert a claim of negligent misrepresentation against defendant BHJ, Inc. citing *Restatement (Second) Torts*

---

1. Wyo. Stat. Ann. § 33–28–124, in applicable part, provides:

   **Act, error or omission in the rendering of real estate services.**

   A cause of action arising from an act, error or omission in the rendering of services provided by a licensee under this act shall be brought within the time limits provided under W.S. 1–3–107.

   This court recognizes that this statute did not become effective until July 1, 2000. Nevertheless, the Hulses contend that this statute is merely a formal codification of the previous intentions of the legislature.

   Wyo. Stat. Ann. § 1–3–107(a)(i) states:

   **Act, error or omission in rendering professional or health care services.**

   (a) A cause of action arising from an act, error or omission in the rendering of licensed or certified professional or health care services shall be brought within the greater of the following times:

   (i) Within two (2) years of the date of the alleged act, error or omission, except that a cause of action may be instituted not more than two (2) years after discovery of the alleged act, error or omission, if the claimant can establish that the alleged act, error or omission was:

   (A) Not reasonably discoverable within a two (2) year period; or

   (B) The claimant failed to discover the alleged act, error or omission within the two

   (2) year period despite the exercise of due diligence.

2. Wyo. Stat. Ann. §§ 33–28–303(c) and 1–3–105(a)(iv)(C) read as follows, respectively:

   (c) A broker acting as a seller's agent owes no duty or obligation to the buyer, except that a broker shall disclose to any prospective buyer all adverse material facts actually known by the broker. The adverse material facts may include adverse material facts pertaining to the title and the physical condition of the property, any material defects in the property and any environmental hazards affecting the property which are required by law to be disclosed. The broker acting as a seller's agent shall not perpetuate a material misrepresentation of the seller which the broker knows or should know is false.

   ------

   **Actions other than recovery of real property.** (a) Civil actions other than for the recovery of real property can only be brought within the following periods after the cause of action accrues:

   . . .

   (iv) Within four (4) years, an action for:

   . . .

   (C) An injury to the rights of the plaintiff, not arising on contract and not herein enumerated[.]

§ 552. In *Richey v. Patrick*, a case involving claims by purchasers of real property against lay sellers, we discussed the tort of negligent misrepresentation as found in the *Restatement* and stated that in order for there to have been a negligent misrepresentation, the plaintiff must show that

> *[o]ne who, in the course of his business, profession or employment,* or in any other transaction in which he has a pecuniary interest, *supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.*

*Richey*, 904 P.2d 798, 802 (Wyo.1995).

In *Richey*, we found that the sellers had not "supplied false information," as required by the claim, because the sellers had not supplied *any* information to the purchasers. We said, "[a] nondisclosure of information cannot support a claim of misrepresentation; since nothing has been represented, an essential element of the claim is missing." *Id.* at 802 (citing *Burman v. Richmond Homes, Ltd.*, 821 P.2d 913, 919 (Colo.App.1991)). We went on to hold that the crux of the purchasers' complaint was that the sellers should have informed them of a material fact, they owed a duty to do so, and it was this nondisclosure that caused the plaintiff's damage. In *Richey*, we then clarified that the appropriate claim was one for negligent nondisclosure as found within *Restatement (Second) Torts* § 551. However, we declined to apply the *Restatement* section to the plaintiffs' claim because we reasoned that the "as is" clause contained within the purchase contract signed by the sellers and purchasers placed the risk of discovery of adverse material facts upon purchasers of real estate. Thus, we recognized the relationship between the parties was essentially contractual and held that when a contract places the burden on the purchaser to discover defects, they are barred from seeking relief for negligent nondisclosure.

Likewise, in our recent case of *Snyder v. Lovercheck*, we addressed as an issue of first impression whether a purchaser of realty could even bring a claim of negligent misrepresentation, a tort action, against a seller when the relationship between the parties arises in contract. Again, we held that the contractual relationship is controlling. When purchasers of realty sign contracts with disclaimers and merger clauses stating that the purchaser is not relying on the representations of the sellers or their agents as to the condition of the property, the contract has allocated the risks of loss resulting from the purchaser's reliance on the seller's representations to the purchaser. In reasoning to our ultimate conclusion, this court had an extended discussion of the distinction between duties arising by tort and those arising by contract. We said:

> Tort law proceeds from a long historical evolution of externally imposed duties and liabilities. Contract law proceeds from an even longer historical evolution of bargained-for duties and liabilities. The careless and unnecessary blanket confusion of tort and contract would undermine the carefully evolved utility of both.
>
> In tort, the legislatures and the courts have set the parameters of social policy and imposed them on individual members of society without their consent. The social policy in the field of contract has been left to the parties themselves to determine, with judicial and legislative intervention tolerated only in the most extreme cases. Where there has been intervention, it has been by the application of well established contract doctrines, most of which focus on threats to the integrity of the bargaining process itself such as fraud or extreme imbalance in bargaining power.

*Snyder v. Lovercheck*, 992 P.2d at 1087.

As illustrated by our holdings in *Richey* and *Snyder*, this court continues to value the freedom to contract between sellers and purchasers of realty. We recognize that the parties to the contract may allo-

cate the risks of loss as they so choose. Having done so, absent proof of fraud, we generally allow the unambiguous language found in the parties' contract to control the scope of subsequent litigation. We have been exceedingly reluctant to introduce tort principles into claims that are essentially contract actions.

However, this court's jurisprudence reflects that the inverse rule is likewise valid. Contract principles that govern the parties to a contract are not controlling on claims against nonparty professionals whose duties arise in tort. *Our precedent reveals a recognition that tort duties and liabilities imposed by the legislatures and courts are supported by underlying social policies which require the imposition of obligations on a defendant to act reasonably for the protection of a plaintiff. By imposing tort duties, courts and legislatures have externally allocated the risks arising from certain relationships for the protection of the public. Having done so, individual parties are limited in shifting those burdens from the obligor to the obligee by private action.*

*At this point in time, there can be no doubt that licensed professional real estate agents and brokers are a class of persons on whom the law has imposed affirmative tort d u ties. Two decades ago this court stated in Hagar v. Mobley:*

> *Real estate brokers and salesmen are licensed by the State of Wyoming and required to meet high standards of honesty, integrity, trustworthiness and competency. Theirs is a regulated profession. Failure to satisfy those standards is ground for suspension or revocation of a real estate broker's or salesperson's license. An act licensing real estate agents must be construed in the light of an obvious purpose of protecting the public in the handling of important and valuable transactions relating to real property. As a result, such an agent does not stand in the same shoes of a lay vendor. Such realtors owe the vendee the same duties of integrity owed the pub-*

*lic at large. They must be honest, trustworthy and competent.*

*Hagar v. Mobley*, 638 P.2d 127, 136 (Wyo. 1981) (emphasis added and citation omitted). In *Hagar*, we cited with approval the reasoning of the Utah Supreme Court reversing the dismissal of a claim against a realtor:

> In this state, it is apparent that the rule of caveat emptor does not apply to those dealing with a licensed real estate agent. *Though not occupying a fiduciary relationship with prospective purchasers, a real estate agent hired by the vendor is expected to be honest, ethical, and competent and is answerable at law for breaches of his or her statutory duty to the public.*

*Hagar*, 638 P.2d at 137 (quoting *Dugan v. Jones*, 615 P.2d 1239, 1248 (Utah 1980)).

Furthermore, we cited with approval the Montana Supreme Court's then recent holding that *real estate brokers have, like other professionals, certain standards of care which must be satisfied. We said that the Montana court observed that the failure to maintain those standards of skill, competency, and integrity exposes realtors to, in effect malpractice actions. Hagar*, 638 P.2d at 137 (citing *McCarty v. Lincoln Green, Inc.*, 190 Mont. 306, 620 P.2d 1221, 1225 (1980)). This court went on to state that we may exact a high standard of care from realtors and held that the standard of care for realtors may be adopted by the court from a legislative enactment. *Id.* (citing *Distad v. Cubin*, 633 P.2d 167 (Wyo.1981)). We reiterated:

> *Realtors, just like doctors, lawyers, engineering consultants, and builders, hold themselves out as professionals; it is their job to know their profession. People rely on and trust them. Failure to comply with either the accepted standards in the field or the standards society is willing to recognize as acceptable, is actionable.*

*Hagar*, 638 P.2d at 138. As to the question of damages, we held "[t]he liability of real estate agents, brokers and salespersons, as in all actions predicated upon the

failure to perform some duty, sounds in tort. In tort cases damages are generally awarded in order to compensate claimants for loss. The measure of damages is the amount which will compensate for all the detriment proximately caused by the breach of duty." *Hagar*, at 139.

Subsequent to our holding in *Hagar*, parties have apparently seized on the language within the opinion stating the duty of care as *"the broker is liable because of material representations of the principal if he repeats them and knows, or reasonably should know, of their falsity. Liability attaches in this context on grounds of negligence,"* id. at 137, and have asserted claims labeled "negligent misrepresentation" against both lay sellers and real estate brokers and agents. "Negligent misrepresentation" and "negligent nondisclosure" are generic tort actions found within the *Restatement (Second) Torts* §§ 552 and 551 respectively. These torts have specific elements and, as previously discussed, this court has addressed in various opinions whether to adopt and apply them to claims brought by plaintiffs against sellers of realty and real estate brokers and agents. *See Richey v. Patrick*, 904 P.2d 798 (Wyo.1995); *Snyder v. Lovercheck*, 992 P.2d 1079 (Wyo.1999); *Sundown, Inc. v. Pearson Real Estate Co., Inc.*, 8 P.3d 324 (Wyo.2000). We have also addressed the effect of various exculpatory clauses on the above causes of action. At this juncture, we reaffirm all prior holdings and precedent as applied to lay vendors/sellers of real property and their agents or subagents, who *are not* licensed real estate professionals.

*However, notwithstanding any subsequent confusion in formulating, titling, or deciding tort claims against licensed real estate professionals premised upon their duties imposed by statute, it is abundantly clear that Hagar contemplated that the claim was one of professional negligence. This is the holding that we expressly reaffirm by this decision. It is further supported by legislative enactments in 1997 by which the Wyoming Legislature essentially codified the court's holding in Hagar and* *went further to expand and clarify the duty of care owed by real estate professionals to parties when acting as seller's, buyer's or intermediary agents. See Wyo. Stat. § 33–28–303 (LexisNexis 2001) Seller's agent engaged by seller; Wyo. Stat. § 33–28–304 (LexisNexis 2001) Agent engaged by buyer; Wyo. Stat. Ann. § 33–28–305 (LexisNexis 2001) Intermediary. The Wyoming Legislature in 2000 adopted Wyo. Stat. § 33–28–124 Act, error or omission in the rendering of real estate services, which provides: "A cause of action arising from an act, error or omission in the rendering of services provided by a licensee under this act shall be brought within the time limits provided under W.S. 1–3–107." Wyo. Stat. Ann. § 1–3–107 is the statute of limitations for claims of professional negligence. It is applicable to claims arising after the effective date of Wyo. Stat. Ann. § 33–28–124.*

*As we held in Hagar, the court may adopt from legislative enactment a standard of care for realtors. Id., 638 P.2d at 137. Wyo. Stat. § 33–28–303(c) provides:*

"A broker acting as a seller's agent owes no duty or obligation to the buyer, except that a broker shall disclose to any prospective buyer all adverse material facts actually known by the broker. The adverse material facts may include adverse material facts pertaining to the title and the physical condition of the property, any material defects in the property and any environmental hazards affecting the property which are required by law to be disclosed. The broker acting as a seller's agent shall not perpetuate a material misrepresentation of the seller which the broker knows or should know is false."

*In Hagar we said that the facts necessary to be disclosed are those that are "pivotal to the transaction from the buyer's perspective." Id. at 138 (quoting Tennant v. Lawton, 26 Wash.App. 701, 615 P.2d 1305, 1309–1310 (1980)).*

*Having hereby outlined what law is applicable to the liability of real estate brokers and salespersons, we note that*

*the claims asserted by the plaintiffs, while labeled "negligent misrepresentation," essentially assert a breach of the duty of care owed by real estate professionals to non-client buyers.* However, as a reviewing court, we are not fact finders in the first instance. The district court's grant of summary judgment did not address the issue of whether BHJ, Inc.'s agent, Hubbard, exercised such care, skill, and diligence as others who are engaged in the profession would ordinarily exercise under similar circumstances in fulfilling the duties imposed upon him by statute. We, therefore, vacate the district court's grant of summary judgment to BHJ, Inc. on the issue of "negligent misrepresentation" and remand for a determination under the applicable standard consistent with the law we have herein set out.

*Hulse,* at ¶¶ 51–62 (emphasis added and footnotes omitted).

[¶ 10] We specifically clarified in *Hulse I,* citing *Hagar* and other cases as precedent, that an affirmative duty exists on the part of real estate professionals with respect to non-client parties to a real estate transaction. Such duty is imposed as a matter of public policy given the importance of transactions relating to real property. As stated in *Richey,* at 802, such duty arises in anyone who, in the course of his business, profession, or employment, supplies false information for the guidance of others in their business transactions, if he fails to exercise reasonable care or competence in obtaining or communicating the information. Thus, within the real estate context, brokers and realtors who unquestionably act through their business, profession, or employment owe a buyer, although not in privity in contract with that buyer, duties of integrity, honesty, and competency.

[¶ 11] Accordingly, we do not agree with the Hulses' argument that because §§ 33–28–124 and 1–3–107 refer to the "rendering of services," such infers the rendering of *professional* services requiring a formal contractual or fiduciary relationship with a client and, therefore, these statutes are inapplicable in this instance where the Hulses were not clients of BHJ. To the contrary, we made it clear in *Hulse I,* (citing in part *Hagar,* at 137 (quoting *Dugan v. Jones,* at 1248)), that although no contractual or fiduciary relationship exists with a buyer, a real estate professional hired by the seller is expected to be honest, ethical, and competent and is answerable at law for breaches of that statutory duty to the buyer as a matter of public policy.

[¶ 12] Likewise, we came to this same conclusion in *Hulse I* with respect to the application of § 33–28–303(c) defining "negligent misrepresentation." As such, we note that § 33–28–303 is not controlled by the four-year statute of limitations imposed by § 1–3–105(a)(iv)(C) but is instead governed by the two-year statute of limitations set forth in § 1–3–107. As stated in *Hulse I:*

[N]otwithstanding any subsequent confusion in formulating, titling, or deciding tort claims against licensed real estate professionals premised upon their duties imposed by statute, it is abundantly clear that *Hagar* contemplated that the claim was one of professional negligence. This is the holding that we expressly reaffirm by this decision.

*Hulse I,* at ¶ 60. This statement simply cannot be characterized as *obiter dictum* as asserted by the Hulses. Rather, this is the established law in Wyoming, as well as the established law of this case. As plainly stated in *Hulse I,* at ¶¶ 60–62, § 1–3–107 sets forth the statute of limitations for claims of professional negligence after the effective date of § 33–28–124. Claims of professional negligence include those claims asserted under § 33–28–303(c) for "negligent misrepresentation" against real estate professionals by non-client buyers.

[¶ 13] Finally, as indicated above, our holding is consistent with long standing case law authority and enacted statutory mandate established in Wyoming. Hence, argument by the Hulses to the contrary is not well taken. In addition, the Hulses request that we adopt the reasoning in *Durbin v. Ross,* 276 Mont. 463, 916 P.2d 758 (1996), implying that because the realtors in that case did not represent the buyers there was no professional relationship and, without such a professional relationship, there could be no actionable claim for professional negligence.

We, however, decline to do so. As stated above, insofar as the court in *Durbin* espouses such a rule of law and is not otherwise limited solely to the required expert testimony issue therein particularly addressed, we find such holding to be directly contrary to established Wyoming authority.

### *CONCLUSION*

[¶ 14]  Upon our review and analysis, we affirm the action of the district court in granting summary judgment in favor of BHJ and against the Hulses in this action.